# NEW ORLEANS WATER WORKS COMPANY *v.* NEW ORLEANS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 134. Argued November 4, 1896. — Decided November 30, 1896.

In the absence of parties interested, and without their having an opportunity to be heard, a court is without jurisdiction to make an adjudication affecting them.

A court of equity cannot properly interfere with, or in advance restrain the discretion of a municipal body while it is in the exercise of powers that are legislative in their character.

Legislatures may delegate to municipal assemblies the power of enacting ordinances relating to local matters, and such ordinances, when legally enacted, have the force of legislative acts.

THE case is stated in the opinion.

*Mr. J. R. Beckwith* for appellant.

*Mr. Samuel L. Gilmore* and *Mr. Henry J. Leovy* for appellee.

*Mr. Thomas J. Semmes* filed a brief for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit was determined in the court below upon demurrer to the bill. The question presented is whether the bill set forth a cause of action entitling the appellant, who was the plaintiff below, to the relief asked.

The case made by the bill is substantially as follows: By the fifth section of the act of the general assembly of Louisiana, commonly known as Act No. 33, Extra Session of 1877, it was provided that the New Orleans Water Works Company, in its corporate capacity, should own and possess the privileges acquired by the city of New Orleans from the Commercial Bank; that it should have, for fifty years from the passage of the act, the exclusive privilege of supplying the city of New Orleans and its inhabitants with water from the Mississippi River, or any other stream or river, by means of pipes and conduits, and for erecting or constructing any necessary works or engines or machines for that purpose; that it might contract for, purchase or lease any land or lots of ground, or the right to pass over and enter the same from time to time as occasion required, through which it might be necessary to convey the water into said city, or to distribute the same to the inhabitants of said city, and construct, dig or cause to be opened any canals or trenches whatsoever for the conducting of the water of the rivers from any place or places it deemed fit, and raise and construct such dykes, mounds and reservoirs as might be required for securing and carrying a full supply of pure water to the city and its inhabitants; enter upon and survey such lands as it might think proper, in order to ascertain

the best mode of furnishing a supply of water; and lay and place any number of conduits or pipes or aqueducts, and cleanse and repair the same, through or over any of the lands or streets of the city, provided the same should not be an obstruction to commerce or free circulation.

The eighteenth section of the same act provided: " That nothing in this act shall be so construed as to prevent the city council from granting to any person or persons, contiguous to the river, the privilege of laying pipes to the river exclusively for his own or their own use."

While the New Orleans Water Works Company was proceeding under the above legislative enactment constituting its charter, the Louisiana constitution of 1879 was adopted. By article 258 of that constitution it was provided: " All rights, actions, prosecutions, claims and contracts, as well of individuals as of bodies corporate, and all laws in force at the time of the adoption of this constitution, and not inconsistent therewith, shall continue as if the said constitution had not been adopted. But the monopoly features in the charter of any corporation now existing in the State, save such as may be contained in the charters of railroad companies, are hereby repealed."

After this constitutional provision took effect, the city council of New Orleans passed, November 15, 1882, an ordinance allowing Robert E. Rivers, the lessee of the St. Charles Hotel in New Orleans, " the right of way and privilege to lay a water pipe from the Mississippi River, at any point opposite the head of Common or Gravier streets, through either of these streets to said hotel, its front and side streets, with all needed attachments and appurtenances, and to distribute said water through said hotel as said Rivers, or lessee, may desire from said pipes," etc.

Rivers being about to take the benefit of this ordinance, the Water Works Company commenced suit against him in the Circuit Court of the United States for the Eastern District of Louisiana, in which it sought a decree perpetually restraining him from laying pipes, conduits or mains in the public streets of New Orleans for the purpose of conveying water from the Mississippi River to his hotel. The company proceeded in

that suit upon the ground that it had a valid contract with the State and city for an exclusive right for the full term of fifty years, from March 31, 1877, of supplying the city of New Orleans and its inhabitants, other than those contiguous to the Mississippi River, with water from that stream by means of pipes and conduits placed in the streets of that city, and that the obligation of that contract was protected by the Constitution of the United States against impairment by any act of the State. Rivers claimed the right to proceed with the construction of pipes, mains and conduits under the authority of the ordinance above referred to, which rested for its validity, as he claimed, upon the constitution and laws of Louisiana.

The bill filed by the Water Works Company against Rivers was dismissed in the Circuit Court, and upon appeal to this court the judgment of dismissal was reversed, with the direction to enter a decree perpetually restraining Rivers, as prayed for in the bill filed by the Water Works Company. The opinion in *New Orleans Water Works Company* v. *Rivers*, 115 U. S. 674, states fully the grounds upon which this court proceeded.

In 1882 the St. Tammany Water Works Company was organized under the general laws of Louisiana for the purpose of furnishing and supplying the inhabitants of the city of New Orleans and other localities contiguous to the line of its works with an ample supply of clear and wholesome water from such rivers, streams and other fountain sources as might be found most available for such purpose by means of pipes and conduits. The company being about to take steps to obtain authority for bringing into New Orleans the waters of the Bogue Falaya River in the parish of St. Tammany, and distributing the same by means of pipes, mains and conduits placed in the streets of the city parallel with those constructed by the New Orleans Water Works Company, the latter corporation instituted, in the Circuit Court of the United States for the Eastern District of Louisiana, a suit for an injunction to restrain the other company from carrying out its scheme. On appeal from the decree of the Circuit Court granting the

injunction, this court reaffirmed the principles announced in the *Rivers case*, saying: "As the exclusive right of the appellee to supply the city of New Orleans and its inhabitants with water was not restricted to water drawn from the Mississippi River, but embraced water from any other stream, it is impossible to distinguish this case in principle from that of the *New Orleans Water Works Company* v. *Rivers*. Upon the authority of the latter case it must be held that the carrying out by the appellant of its scheme for a system of water works in New Orleans would be in violation of the rights of the appellee, and that the state constitution of 1879, so far as it assumes to withdraw the exclusive privileges granted to the appellee, is inconsistent with the clause of the national Constitution forbidding a State from passing any law impairing the obligation of contracts." *Tammany Water Works Co.* v. *New Orleans Water Works Co.*, 120 U. S. 64, 67.

The present suit was brought February 8, 1894, by the New Orleans Water Works Company against the city of New Orleans. The bill sets out the foregoing facts, and gives the history of the two cases to which reference has been made.

It further alleged that after the above adjudications the defendant continued to make and promulgate ordinances conferring upon individuals and corporations the right to lay pipes and mains through the streets and public ways of New Orleans to premises not contiguous to the rivers and waters with which said pipes and mains connected, from which the water supply is drawn and consumed within the city of New Orleans, such premises not being included in the proviso in the plaintiff's charter relating to the owners of property contiguous to said waters; that the defendant has continued to pass and promulgate such ordinances, and threatens to continue to do so in the future; that the ordinances set forth by copy, and contained in Exhibit C², filed with and made a part of the bill, had been adopted and promulgated by the defendant in open defiance and disregard of the plaintiff's rights; that the plaintiff is advised and believes that the said ordinances set forth in said Exhibit C constitute but a portion of those of like character adopted and promulgated by the defendant;

that in nearly all instances where said ordinances have been adopted and promulgated the parties named as the beneficiaries or grantees therein have availed themselves of the said act of the city to lay pipes and mains through the streets and public ways of the city, and established pumping machinery to draw water through said mains for a water supply; that in the instances where they have not already availed themselves of this supposed warrant to establish water works of their own they are intending to so establish pipes and mains, and will do so unless restrained therefrom by the courts; and that none of the premises referred to in said ordinances are contiguous to the Mississippi River, or within the proviso contained in the plaintiff's charter and contract with the State relating to or affecting the owners of property contiguous to the river.

The bill also alleged that most of the persons and corporations named as grantees in said ordinances are large consumers of water, and but for said wrongful act of the city would be customers of and consumers of the water provided as public water supply by the plaintiff; that the plaintiff has pipes and mains so located that it could supply all of said premises with water, and should receive recompense and profit thereby; that its franchises, and the income that should accrue to it from public water supply, have been lessened and its revenues diminished by a sum exceeding thirty thousand dollars in the past, and that such loss of income and revenue is continuing, and if continued during the lifetime or corporate existence of the plaintiff, would amount to many thousand dollars more; that many of the said ordinances of the city of New Orleans complained of contain on the face thereof a condition that said license or grant of the right to lay pipes and mains and pump water from the river shall continue only during the will of the defendant; that in the cases where that provision is not contained in the text of the ordinances, the city has full and complete power to revoke and recall such fraudulent and wrongful grants and permissions at its will, and thereby cease to countenance said wrongdoers, or furnish them with any colorable right to continue and maintain said pipes and mains

so wrongfully established, and in good conscience should recall, revoke and expunge all of said pretended ordinances and regu-, lations, of its own motion, without compulsion; that by reason of the said wrongful acts of the defendant, and the large number of grants and privileges made by the city, it is practically impossible for the plaintiff to obtain full and adequate relief through proceedings instituted against the said several persons and corporations receiving said supposed grants and authority to establish pipes and pumping machinery for the purpose of drawing water from the Mississippi River by reason of the great delays and the enormous expense of litigating with so many several defendants, and the multiplicity of suits and actions necessary to restrain said wrongful acts by proceeding against the several supposed grantees.

It was further alleged that the defendant and other persons proposing to assail the plaintiff's rights contend that there is ambiguity and uncertainty in the 18th section of plaintiff's charter; that at the time of the acceptance of its charter and grant the plaintiff was advised, and it believes correctly, that said section 18 could only lawfully be construed as conferring upon the city the right to grant the privilege of laying pipes to such person or persons, or corporations as may, at the time of such grant, be the owner of, or in the lawful possession of, real estate or property extending down to the river front and touching the said river, and having riparian rights on the banks of said river, subject only to such public servitude, or right of way, as may be impressed upon said property by the operation of the general statutes of Louisiana, bearing upon servitudes attaching to public waters, relating to the right of the public, to moor and unload vessels at such banks, and a right of way for travel, or public roads on or along the banks of such waters, and the servitude or right the public may have to occupy the banks of rivers, and to establish levees, or embankments, to prevent overflow, where such public waters are subject or liable to overflow, from any cause; that the defendant and others allege and insist that such construction does not express the intent of the legislature of the State in grant-ing said franchises, and insist upon a construction and range

for § 18, which, if correct, would destroy the plaintiff's rights and privileges conferred under and by its charter, in so far as the same relate to the territory and limit within which the plaintiff has the exclusive right to furnish public water supply through pipes and mains; that this alleged ambiguity has given rise to serious contention, has already caused, and, if continued, will in the future cause, the plaintiff much contention, litigation, expense, loss and damage; that it is important that the true, actual and proper construction of said § 18, and the proviso therein contained, should be judicially ascertained and decreed; that the court should adjudge, decree and declare, as between the plaintiff and the defendant, the true and actual meaning and construction of said section and proviso, in order that all future disputes and contentions in relation thereto may be at an end, and the plaintiff have knowledge of its actual rights in the premises; that the plaintiff is remediless in a court of law, and therefore applies and appeals to the court sitting in equity, having peculiar and full power and jurisdiction in the premises by virtue of the Constitution and laws of the United States; and that all of said actings and doings of the defendant are contrary to equity and good conscience, and tend to the manifest wrong, injury and oppression of the plaintiff.

The relief sought by the bill is a decree determining to what class the property, ownership or possession of the property specified contained in that § 18 applies, and establishing and defining the limit beyond which the defendant has no power under said state legislation to authorize any person or corporation to invade the plaintiff's exclusive rights by laying pipes and drawing water from the Mississippi River or other public waters; that it be also adjudged and decreed that the rights conferred upon the plaintiff are those declared in *New Orleans Water Works Company* v. *Robert E. Rivers,* and in the case of *The New Orleans Water Works Company* v. *The St. Tammany Water Works Company;* that the plaintiff is lawfully entitled to have for and during the period named in said act of incorporation all of the exclusive rights and privileges named and set forth therein; that all the said acts, reso-

lutions and grants sought to be made by the defendant to persons or corporations, not being possessors or owners of property not touching the banks of the Mississippi River within the parish of Orleans, are null, void and of no effect; that defendant be ordered, adjudged and decreed, within a time certain, to be named in the decree, to recall, expunge, repeal and cancel each and all of said alleged ordinances, resolutions, grants or licenses so made by it, since the date the plaintiff became invested with said exclusive rights, save only such grants, permits, ordinances or resolutions as relate to or are confined to property and premises contiguous to the Mississippi River; and that in the event defendant shall neglect or refuse in some public way to declare the same recalled, cancelled, annulled and avoided within a time specified in such decree, the court will declare, adjudge and decree the same, and each and all of them, to be absolutely null and void and of no effect, and as conferring no rights or authority whatsoever, nor lawful reason for the invasion of the plaintiff's said exclusive rights.

The plaintiff asked that a writ of injunction be issued, inhibiting and forbidding the city of New Orleans, its council, officers, agents or departments, from granting or allowing to any person, persons or corporation any further or other like grants, licenses, privileges or warrants in any form, on the face thereof assuming to grant unto any person, persons or corporation any right or privilege to lay or maintain any pipes, mains or conduits from the Mississippi River across, along or through any public place or territory within the limits of New Orleans, where said premises are not contiguous to the Mississippi River; also, that it be adjudged and decreed that in so far as the matters were in issue and litigated in said cause of the said New Orleans Water Works Company against the St. Tammany Water Works Company, the judgment and decree therein determined the rights of the plaintiff, as between it and the city of New Orleans, beyond further contention and dispute, and that the defendant "be compelled to abide by, observe and enforce the same"; and that such decree be carried into full force and effect by such proper order, judgment

or decree therein as might be necessary to accomplish that end and compel obedience to its provisions.

The Circuit Court sustained a demurrer to the bill, and dismissed the suit with costs to the city.

It appears from the bill of complaint — the facts therein set forth being admitted by demurrer — that the city of New Orleans has by ordinances granted to a large number of corporations, associations and individuals the privilege of laying pipes in its streets for the purpose of conveying water to their respective premises from the Mississippi. These ordinances, the plaintiff contends, are in derogation of its rights and privileges as heretofore declared and adjudged by this court in the *Rivers* and *St. Tammany cases*. None of the parties for whose benefit the ordinances above referred to were passed were brought before the court or given an opportunity to be heard. Nevertheless, the plaintiff seeks a decree not only declaring those ordinances to be null and void, but requiring the city, within a named time, to recall, expunge, repeal and cancel each ordinance that does not relate to premises contiguous to the Mississippi River, and if the city does not, within such time, and in some public way, cancel and annul those ordinances, then that the court, in this suit, shall adjudge and decree them to be null and void as illegally interfering with the rights of the plaintiff.

We do not suppose that any precedent can be found that would justify a court of equity in giving such relief. A decree declaring the ordinances in question void would have no effect in law upon the rights of the beneficiaries named in the ordinances; for, in the absence of the parties interested and without their having an opportunity to be heard, the court would be without jurisdiction to make an adjudication affecting them. Such a decree would appear, upon the very face of the record, not to be due process of law, and could be treated everywhere as a nullity. *Windsor* v. *McVeigh*, 93 U. S. 274, 277; *Pennoyer* v. *Neff*, 95 U. S. 714, 733; *Scott* v. *McNeal*, 154 U. S. 34, 46.

Ought the court to have proceeded to a decree, or held the bill to be sufficient for relief, as between the plaintiff and the

city? In effect, a decree is asked against the city reasserting, for its guidance in the future, the principles announced in the *Rivers* and *St. Tammany cases,* and informing it that, in passing the ordinances complained of, it had done violence to those principles. But of what avail would such a decree be, if the city council, the members of which are not before the court, were left free to enact ordinances granting to other parties, in violation of the plaintiff's rights, the privilege of placing pipes in the streets of the city through which to convey water from the Mississippi River to their respective premises? If it be said that a final decree against the city, enjoining it from making such grants in the future, will control the future action of the city council of New Orleans, and will, therefore, tend to protect the plaintiff in its rights, our answer is that a court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in their character. It ought not to attempt to do indirectly what it could not do directly. In view of the adjudged cases, it cannot be doubted that the legislature may delegate to municipal assemblies the power of enacting ordinances that relate to local matters, and that such ordinances, if legally enacted, have the force of laws passed by the legislature of the State and are to be respected by all. But the courts will pass the line that separates judicial from legislative authority if by any order or in any mode they assume to control the discretion with which municipal assemblies are invested, when deliberating upon the adoption or rejection of ordinances proposed for their adoption. The passage of ordinances by such bodies are legislative acts which a court of equity will not enjoin. *Chicago* v. *Evans,* 24 Illinois, 52, 57; *Des Moines Gas Co.* v. *Des Moines,* 44 Iowa, 505; 1 Dillon on Mun. Corp. § 308, and notes; 2 High on Injunctions, § 1246. If an ordinance be passed and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement. *Page's case,* 34 Maryland, 558, 564; *Baltimore* v. *Radecke,* 49 Maryland, 217, 231.

As no decree can be properly rendered that will affect the

rights of the beneficiaries named in the ordinances enacted before this suit was commenced — such beneficiaries not being before the court — a court of equity ought not, by any form of proceeding, to interfere with the course of proceedings in the city council of New Orleans, and enjoin that branch of its municipal government from hereafter passing ordinances similar to those heretofore enacted and which are alleged to be obnoxious to the plaintiff's rights. The mischievous consequences that may result from the attempt of courts of equity to control the proceedings of municipal bodies when engaged in the consideration of matters entirely legislative in their character, are too apparent to permit such judicial action as this suit contemplates. We repeat that when the city council shall pass an ordinance that infringes the rights of the plaintiff, and is unconstitutional and void as impairing the obligation of its contract with the State, it will be time enough for equity to interfere, and by injunction prevent the execution of such ordinance. If the ordinances already passed are in derogation of the plaintiff's contract rights, their enforcement can be prevented by appropriate proceedings instituted directly against the parties who seek to have the benefit of them. This may involve the plaintiff in a multiplicity of actions. But that circumstance cannot justify any such decree as it asks.

Upon the grounds we have indicated, and without considering the merits of the case, the decree below must be

*Affirmed.*