## IRON CLIFFS COMPANY *v.* NEGAUNEE IRON COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 173.   Argued March 9, 10, 1905.—Decided April 3, 1905.

No person can be deprived of property rights by any decree in a case wherein he is not a party.

Where a corporation is not itself made a party to the suit, complainant alleging that its corporate existence had ended, its rights cannot be adjudged even though certain persons are made defendants on the ground that they are using the name of the corporation as a cover for their alleged wrongful acts and they answer, denying any personal interest, and claiming that the corporation is a going concern and justify their acts as its agent; and a decree of a state court· in such an action cannot be reviewed in this court at the instance of one of such defendants on the ground that the corporation has been deprived of its property without due process of law.

THIS case was begun in the Circuit Court of the State of Michigan by the defendants in error, The Negaunee Iron Company, Edward N. Breitung and Mary Kaufman, against The Iron Cliffs Company, The Cleveland Cliffs Iron Company, William G. Mather and Murray M. Duncan.   The defendants in error, plaintiffs in the court below, claimed to be the owners of certain premises upon which there was an outstanding lease purported to run for a term of ninety-nine years from its date, September 17, 1857, made by Charles Harvey to the Pioneer Iron Company.   As the controversy in this court centers about this lease the allegations of the bill in respect thereto may be noticed.   It is alleged that the interest conveyed by Harvey on the seventeenth day of September, 1857, to the Pioneer Iron Company was for the sole purpose of mining and quarrying at its own expense such ores and marble as might be found on the premises, subject to the qualification that the said company should not quarry, mine or remove any ore from said

lands, except such as it could actually convert into merchantable iron in its own furnaces and forges, being the furnaces and forges then being constructed or about to be constructed by the said company at Negaunee. Complainants allege that at the time of the filing of the bill they were, and for more than fifteen years theretofore, had been in the actual and exclusive possession of all the lands described in the bill, and the ore and marble thereon, claiming to be the exclusive owners thereof. That said Pioneer Iron Company, in the month of September, 1859, erected two certain ore furnaces at Negaunee instead of one furnace, as contemplated at the time of the execution of the grant or lease by Harvey to the Pioneer Iron Company.

That said Pioneer Iron Company carried on the business of manufacturing iron at its said furnaces from the time they were constructed until about the first day of January, 1866. That said Pioneer Iron Company, in carrying on its said business, procured no iron from the premises, or any portion of the premises described in said lease executed by the said Charles T. Harvey to the said Pioneer Iron Company, but procured all of its ore for the manufacturing of iron from other lands.

Complainant alleges that on the first day of January, 1866, the Pioneer Iron Company ceased to do business, and has not since that time manufactured or operated under the lease, but, on the contrary, at and from the date aforesaid abandoned the same. On the tenth day of March, 1866, the Pioneer Iron Company entered into an agreement with and leased to the Iron Cliffs Company for the period of ten years its entire real and personal property situated in the county of Marquette, Michigan, consisting of all its iron works, buildings, lands and property rights. That after making said lease and agreement with the Iron Cliffs Company the said Pioneer Iron Company has made and filed no reports as required by the laws of the State of Michigan.

"That at some time prior to the first day of January, 1873, the said Iron Cliffs Company became the owner of all the capital stock of said Pioneer Iron Company, and said stock has

since that time been held in the names of different individuals for the uses and purposes of said Iron Cliffs Company, and the certificates of stock representing said capital stock of said Pioneer Iron Company have been and now are held in the names of different individuals who are officers, directors, stockholders, agents or servants of the said Iron Cliffs Company and of the Cleveland Cliffs Iron Company, a corporation organized under the laws of the State of West Virginia and doing business at Negaunee, in said county of Marquette, Michigan, which two corporations have been operating together in the conduct of their business, and whose officers and agents are in the main the same persons; that said stock is held as aforesaid for the use and benefit of said Iron Cliffs Company. and the said Cleveland Cliffs Iron Company.

"That on the second day of April, A. D. 1887, the corporate existence of said Pioneer Iron Company, by the terms of its articles of association, expired by limitation, and said corporation became and was thereby dissolved; and that whatever rights, if any, the said Pioneer Iron Company had and held under and by virtue of said lease were thereby terminated and extinguished, and such rights and interest thereby reverted to and became vested in said Charles T. Harvey and his grantees.

"That all the lands hereinbefore specially described are mineral lands and have therein large deposits of valuable iron ore and that. the chief value of said lands consists in the iron ore situated therein, and the mining and removing therefrom of said iron ore by the defendants would take from said lands their principal value and would work and would be to your orators an irreparable injury.

"That the officers and agents of said Iron Cliffs Company and said Cleveland Cliffs Iron Company, who are engaged in and carrying out the said scheme and plan to defraud your orators and to mine and remove the iron ore from said lands under the cover and by the use of the name of the Pioneer Iron Company, are, so far as they are known to your orators, William G. Mather, who is the president of said Iron Cliffs

Company and also president of said Cleveland Cliffs Iron Company, and Murray M. Duncan, who your orators are informed and believe, and upon information and belief charge the truth to be, is the managing agent of the said Iron Cliffs Company and of the said Cleveland Cliffs Iron Company. That said Duncan and said Mather and their confederates, as aforesaid, well know that the corporate existence of the said Pioneer Iron Company has long since been terminated and said corporation dissolved, and that the rights and privileges granted in said lease of date September 17, 1857, have reverted to the said Charles T. Harvey and his grantees; notwithstanding which said Duncan, under the pretense that he is acting as agent of said Pioneer Iron Company, is engaged in superintending and directing said work which is being done on said lands by various persons who are laborers acting under his orders."

The prayer of the bill is:

"(1.) That by the decree of this honorable court, all the rights and privileges in the mineral and stone granted in said lease, executed by the said Charles T. Harvey as aforesaid, to the said Pioneer Iron Company, be declared to be terminated and of no binding force or effect as against your orators or their said lands.

"(2.) That in so far as it affects your orators' said lands, said lease be cancelled and the cloud upon your orators' title as aforesaid be removed, and your orators' title to all the iron ore and marble in and upon their said lands be quieted and confirmed in your orators.

"(3.) That the said William G. Mather, Murray M. Duncan, the said Iron Cliffs Company and the said Cleveland Cliffs Iron Company, and their officers, directors, agents, attorneys and employés, be perpetually enjoined and restrained from setting up in the name of said Pioneer Iron Company or in any other manner any right or title under said lease from said Charles T. Harvey to said Pioneer Iron Company, in or to your orators' said lands, and entering upon or removing from said lands any

iron ore or marble, and for such other and such further relief as to the court shall seem meet and proper."

One of the defendants, Murray M. Duncan, answering separately, took issue upon the allegations of the bill and denied specially that the Pioneer Company is dissolved, or any of its rights or property under the lease or conveyance terminated, and avers that the said Pioneer Iron Company is still the owner of the property rights and interests granted and conveyed; admits that he, as an agent of the said company, has actively engaged in conducting operations on some of the lands covered by the conveyance, for the purpose of discovering iron ore to be used in the furnaces of the Pioneer Iron Company, and that if ore sufficient in quantity and quality is discovered on the premises the said Pioneer Iron Company intends immediately to purchase the right to the surface, as required in the agreement, and intends to continue explorations until it finds ore on said lands for the use of its furnaces, or discovers the nonexistence of such ore, and further says that he has no personal interest in the lands set forth in the bill, but in all his actions is merely the agent of the Pioneer Iron Company, and not the agent of any other corporation or person whatsoever.

The Iron Cliffs Company and Cleveland Cliffs Iron Company and William G. Mather answer together, taking issue upon the allegations of the bill, admitting the existence of the lease of the Pioneer Iron Company, and aver that the entering and explorations on the lands were made and have been carried on by the Pioneer Iron Company, and deny that the charter of said company has expired; admit that said company through its agents has continued to carry on the operations begun by the Pioneer Iron Company under the direction of William G. Mather, as one of the officers of said company, and deny any interest in the matter set forth in the bill except as some or all of them may be stockholders or officers in the Pioneer Iron Company.

After issue joined and proofs taken the bill of complaint was amended so as to charge that the defendants claim and pretend

that under the provisions of number 142 of the Public Acts of 1889 and under number 60 of the Public Acts of 1899 of the State of Michigan, said Pioneer Iron Company has been reorganized and that by reason of said act such reorganized company had the right to mine ore under the said lease. The defendants answered the amendment and admitted that in April, 1901, the Pioneer Iron Company had caused to be filed in the office of the Secretary of State and in the office of the clerk of Marquette County certain perfected articles of incorporation of the said company in renewal of the original organization of said company and under said reorganization, as well as previous filings claimed to be a valid corporation. The record discloses that certain articles of association undertaking to reorganize the Pioneer Iron Company were adopted October 18, 1889, and filed in the office of the Secretary of State, April 8, 1900, and amended articles were filed on April 8, 1901.

And, raising a Federal question, William G. Mather made the following answer:

"And this defendant, William G. Mather, answering for himself, says he owns in his own right and as trustee, 3940 shares of stock of said company, and that if any decree be rendered, in this case by the court in any way declaring a forfeiture or termination or expiration of said ninety-nine year lease, or in any way affecting the rights of the Pioneer Iron Company thereunder, that said Pioneer Iron Company not being made a party to this proceeding, he as such stockholder, and said Pioneer Iron Company would thereby be deprived of its and his property without due process of law, in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States, which forbids any State to deprive any person of life or liberty or property without due process of law, and this defendant avers that any decision or findings of the court in any way limiting, terminating, changing, modifying, annulling, or diminishing the value of any of the rights of the Pioneer Iron Company under said ninety-nine year lease, and

as expressed therein, would be void and of no effect under said provision of said amendment of the Constitution of the United States."

Upon hearing, the Circuit Court, after setting forth certain findings, entered the following decree:

"Now, therefore, in consideration of the foregoing findings and determinations of the court concerning the particular matters set forth in the complainants' bill of complaint, it is ordered, adjudged and decreed that the defendants, their counselors, attorneys, solicitors and agents, and each and every of them, whether acting in their individual or representative capacity, immediately vacate and remove from the lands described in the bill of complaint, and that they and each of them be and they hereby are perpetually enjoined from further entering upon the said lands of the complainants for the purpose of exploring for or taking therefrom any minerals or iron ore, or for any purpose whatever, without the consent and authority of the complainants."

This decree, upon appeal, was affirmed by the Supreme Court of Michigan. 96 N. W. Rep. 468.

From this judgment a writ of error was sued out to this court.

*Mr. Elihu Root* and *Mr. James H. Hoyt* for plaintiffs in error as to the jurisdiction:

A court can make no decree affecting the rights of an absent person, and can make no decree between the parties before it, which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit, without affecting those rights. *Shields* v. *Barrow*, 17 How. 130, 141; *Mallow* v. *Hinde*, 12 Wheat. 198; *California* v. *So. Pacific Co.*, 157 U. S. 229, 248; *Minnesota* v. *Northern Securities Co.*, 184 U. S. 199, 237; *Water Co.* v. *Babcock*, 76 Fed. Rep. 243.

Where the rights of a party before the court depend upon the rights of a party not before the court, an adjudication be-

tween parties to a suit which involves or affects and thereby determines the property rights of such persons who are not before the court, violates the constitutional provision, preventing the taking of property without due process of law. *Taylor & Co.* v. *So. Pacific Co.*, 122 Fed. Rep. 147, 152; *Water Works* v. *New Orleans*, 164 U. S. 480; *Pennoyer* v. *Neff*, 95 U. S. 714, 733; *Windsor* v. *McVeigh*, 93 U. S. 264, 277.

The Federal question was properly set up and claimed. *Bridge Co.* v. *Illinois*, 175 U. S. 634; *Water Co.* v. *Canal Co.*, 142 U. S. 254, 268; *Land & Water Co.* v. *Ranch Co.*, 189 U. S. 177; *Dewey* v. *Des Moines*, 173 U. S. 199; *Roby* v. *Cochour*, 146 U. S. 153, 159. The judgment was not based on non-Federal questions; the questions actually decided by the state court require the presence of the Pioneer Iron Company and its constitutional rights were invaded, and no judgment should have been rendered without permitting it to be heard.

*Mr. Benton Hanchett* and *Mr. S. W. Shaull,* with whom *Mr. Arch. B. Eldredge, Mr. H. F. Pennington* and *Mr. Charles R. Brown* were on the brief, for defendants in error. .

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Federal question, from which alone this court can take jurisdiction, is alleged to arise from the adverse decision made upon the answer of William G. Mather, setting up, in substance, that in proceeding to determine the case and render a decree, without the presence of the Pioneer Iron Company as a party defendant in the action, the said company and Mather, as a stockholder therein, were deprived of property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States. It is elementary that, unless such Federal right set up in the state court was denied the plaintiff in error, this court has no jurisdiction. An examination of the opinion and decision of the Supreme Court

of Michigan shows the court held, among other things, that the lease to the Pioneer Iron Company and the rights acquired thereby were appurtenant to the furnaces then existing upon the lands, and that it acquired no right to mine more ore than was necessary to supply such furnaces. That as the right to mine the ore under the lease was appurtenant to the blast furnaces erected and intended to manufacture the iron so mined, the abandonment and destruction of the furnaces destroyed the right to mine the ore under the lease. The Pioneer Company, after the execution of the ninety-nine year lease having found ore in non-paying quantities, had abandoned explorations, and for forty-three years had made no attempt to mine on the lands. That in 1866 the Pioneer Iron Company conveyed to the Iron Cliffs Company, for a period of ten years, all its iron works, buildings, lands and property rights. The Iron Cliffs Company afterwards became the owner of all the stock of the Pioneer Company and thereafter carried on the furnace business. That the Pioneer Iron Company was regarded as merged in the Iron Cliffs Company, and never thereafter made or filed any reports as required by the laws of the State of Michigan. That the complainants and those under whom they claim right and title, beginning about the year 1870, spent large sums of money in exploring and developing the lands and opening valuable mines thereon, and that the rights thus acquired, with the knowledge of those in interest, had worked an estoppel of any claim of right under the lease. For these, among other reasons, the Supreme Court affirmed the decree of the Circuit Court.

It is apparent that the questions decided in the state Supreme Court were of a non-Federal character, and give no right of review here unless it is true that in this judgment the Pioneer Iron Company has been concluded, and its property rights taken without giving it an opportunity of being heard in the case. It is fundamental that no person can be deprived of property rights by any decree in a case wherein he is not a party. Not being made a party to the suit, the rights of the

Pioneer Iron Company cannot be affected in any way by the decision of the court. *Finley* v. *United States Bank,* 11 Wheat. 304, 307; *New Orleans Water Works* v. *New Orleans,* 164 U. S. 471, 480.

But it is urged that, notwithstanding the Pioneer Iron Company is not a party to the record, its rights are necessarily adjudged in the decision which affects the lease granted· to it, and under which the defendants in their answer claim to act. But we cannot concede this proposition. It may be answered primarily that the Pioneer Iron Company cannot thus be denied its rights. The affirmative relief granted to the complainant must be on the case made in the bill, its amendment, and the testimony supporting the allegations therein made. The bill proceeds upon the theory that under the laws of the State of Michigan the -charter of the. Pioneer Iron Company had expired in 1887, thirty years from the date of its organization, and there was the most careful avoidance in the pleadings of the complainant of any recognition of the existence as a going corporation of the Pioneer Iron Company. It was charged in the bill that its corporate existence had ended, and so far from making it a party the complainants refrained from recognizing it as an existing corporation, and the relief sought was against the corporations and persons named and made defendants in their own right and not as agents of the Pioneer Iron Company, but who were alleged and found to be using the name of that corporation as a cover for wrongful acts of their own. The mere fact that the defendants sought to justify their acts as agents of the Pioneer Iron Company would not warrant the court in awarding a decree against that company or its agents, neither being made a party to the record. Nor, in our opinion, did the judgment rendered have this effect. In the case of *Tindal* v. *Wesley,* 167 U. S. 204, where a suit was brought in South Carolina to recover possession of certain real property in that State, one of the defendants answered that he had no personal interest in the·property except as Secretary of the State of South Carolina, in which capacity alone he had ac-

quired the control of the property. It was argued that in that event the suit could not be maintained, because it was in fact an action against the State within the meaning of the Eleventh Amendment, and the judgment of the court concluded the State. To this contention this court, speaking by Mr. Justice Harlan, made answer:

"It is said that the judgment in this case may conclude the State. Not so. It is a judgment to the effect only that, as between the plaintiff and the defendants, the former is entitled to possession of the property in question, the latter having shown no valid authority to withhold possession from the plaintiff; that the assertion by the defendants of a right to remain in possession is without legal foundation. The State not being a party to the suit, the judgment will not conclude it. Not having submitted its rights to the determination of the court in this case, it will be open to the State to bring any action that may be appropriate to establish and protect whatever claim it has to the premises in dispute. Its claim, if it means to assert one, will thus be brought to the test of the law as administered by tribunals ordained to determine controverted rights of property; and the record in this case will not be evidence against it for any purpose touching the merits of its claim."

So in this case, notwithstanding the answer of the defendants justifying, as agents of the Pioneer Iron Company, the bill made neither the company nor any agent of it as such a party to the proceedings. The mere fact that the claim is made that the Pioneer Iron Company will be concluded can have no effect upon it so long as it has not submitted its rights to adjudication by voluntary proceedings on its part or been brought into court by proper process. It is true the defendants claim the charter of the company has been renewed and that it is still a going corporation. It is conceded that at the date of its origin the constitution of the State of Michigan prohibited the organization of corporations for a period greater than thirty years. That the Supreme Court of Michigan did

not intend to adjudicate that the Pioneer Iron Company if reorganized was concluded by the decree of the Circuit Court, is shown by the language used in the conclusion of its opinion:

"The constitution, at the date of its organization and at the expiration of its charter, expressly prohibited the organization of corporations beyond the period of thirty years. No provisions then existed, either by the constitution or by the statute, authorizing a reorganization of corporations which had expired by limitation. A constitutional amendment was adopted in 1889, authorizing the legislature to provide by general laws for one or more extensions of the term of such corporations, and also for the reorganization 'for a further period not exceeding thirty years of such corporations whose terms have expired by limitation, on consent of not less than four-fifths of the capital.' Pursuant to this authority the legislature in 1889 passed an act authorizing such reorganization. 2 Comp. Laws, § 7035. Very important questions are raised by counsel as to the effect of this reorganization statute, the validity of the act of reorganization by the Pioneer Iron Company, as to whether the Pioneer Iron Company was in position to avail itself of this statute, and also the effect upon the ninety-nine year lease should the reorganization be held to be valid. Inasmuch, however, as these questions are not essential to a decision of the case, we refrain from determining them."

But it is said the Supreme Court affirmed the decree of the lower court, in which the defendants were enjoined in a representative capacity, and that this includes them as agents of the Pioneer Iron Company, and that when the agents of the company are enjoined the decree amounts to a judgment against the corporation which they represent. But in view of the pleadings, as already stated, and the claim made and insisted upon by the complainants that there was no Pioneer Iron Company in existence, we think the language in the decree has reference to the injunction and order against the corporations and individuals made defendants and their attorneys, solicitors and agents, in their representative capacity, that is,

as representing the defendants in any of the ways mentioned. The decree was rendered after finding in favor of the complainants' theory of the case, and had the effect to require the defendants to the bill, their agents and attorneys, to vacate the premises, and enjoined them from further mining thereon. It is utterly inconsistent with the proceedings and the decree to enlarge the judgment so as to include agents of the Pioneer Iron Company. If it should hereafter be insisted that the rights of that company or its agents are concluded, a Federal question might arise if such effect shall be given to the decree in this action. In our view of this case there is nothing in the proceedings or decree in anywise conclusive of the rights of the Pioneer Iron Company, if it is held to be a living corporation, or any of its duly authorized agents acting in its behalf.

We, therefore, find that no Federal question arises upon this record. The proceedings in this court will be dismissed for want of jurisdiction.