246 So.2d 162 (1971)
Joseph SACKETT, Appellant,
v.
CITY OF CORAL GABLES, a Municipal Corporation and Political Subdivision of the State of Florida, Appellee.
No. 71-235.
District Court of Appeal of Florida, Third District.
March 23, 1971.
Rehearing Denied April 21, 1971.
*163 Adams, George & Wood, Miami, for appellant.
Charles H. Spooner, City Atty., and Robert D. Zahner, Asst. City Atty., George N. Jahn, for appellee.
Before PEARSON, C.J., and CHARLES A. CARROLL and HENDRY, JJ.
PER CURIAM.
Plaintiff-appellant Sackett, brings an interlocutory appeal to review an order denying a petition for a temporary injunction directed against defendant-appellee the City of Coral Gables. We affirm the order appealed; we vacate the constitutional stay writ heretofore entered.
Appellant is a citizen and resident of Coral Gables and an owner of real property adjoining a tract of land of roughly 500 acres known as the Cocoplum Properties. His suit requesting a temporary and permanent injunction is to prevent further action by the City Commission on a proposed amendment to the Coral Gables Zoning Code, Ordinance No. 1525, which would rezone portions of the Cocoplum tract.
Section 14 of the Charter of the City of Coral Gables, Florida Chapter 13972, Special Acts of the State of Florida 1929, (hereinafter the "Charter") provides:
"Sec. 14 Ordinances, form procedure; publication.
"The Commission shall act only by ordinance or written resolution * * * No ordinance shall be passed until it has been read on two separate days or the requirement of readings on two separate days has been dispensed with by a four-fifths vote of the members of the Commission. The final reading shall be in full. The yeas and nays shall be taken upon the passage of all ordinances or resolutions and entered upon the journal of the proceedings of the Commission, and every ordinance or resolution shall require on final passage the affirmative vote of a majority of all its members. * * *" [Emphasis added.]
Similarly, Section 13 of the Charter requires that:
"* * * No resolution shall be adopted or order made unless three votes are recorded in favor thereof."
On December 15, 1970, the five-member City Commission passed the amendment to the zoning ordinance on first reading by a vote of four "yea" and one "nay" vote on a non-emergency and non-exceptional basis. On February 9, 1971, the proposed amendment was scheduled as an agenda item for its second reading. The vote was two "yea," two "nay," and one abstention. The minutes of the February 9th meeting noted that the motion to pass the amendment "failed." Three other motions dealing with the proposed zoning ordinance *164 also "failed" according to the official minutes.
Section 12.09 of the Zoning Code, Ordinance 1525, provides as follows:
"Section 12.09 LIMITATIONS OF SUBSEQUENT APPLICATIONS. Whenever any application for a variance or change of zoning shall have been finally determined, no other or further application for a variance or change of zoning with reference to the particular property affected by said application, or with reference to other property similarly situated, will be considered for a period of one (1) year following the date of such action. * * *" [Emphasis added.]
Section 12 of the Charter allows the Commission to adopt its own rules of procedure:
"The Commission may determine its own rules of procedure. * * * A majority of all members of the Commission shall constitute a quorum to do business, but a smaller number may adjourn from time to time."
By Resolution No. 9920, passed April 16, 1963, the Commission adopted Roberts' Rules of Order (rev'd.)
The record does not reveal whether the Commission did modify, suspend, or waive its Rules in considering this matter, nor whether the Commission considered or passed a motion for reconsideration or rescission. We assume from the briefs and oral argument that the Commission has not waived its Rules or reconsidered the matter.
When the instant proposed amendment to the Zoning Code was placed on the Commission agenda for March 9, 1971, (but was rescheduled for the March 12 meeting) appellant instituted this suit on March 1, 1971, for a temporary and permanent injunction against the City. The developers were permitted to intervene as party defendants and were present at the hearing on appellant's petition for the temporary injunction. The developers are also appellees herein. Testimony was taken and the Charter and Ordinances quoted above were introduced in evidence. After argument the trial court denied the petition for a temporary injunction, and Sackett appealed.
The instant suit is not a zoning case. By this suit the appellant attempts to enjoin actions already taken by the City Commission; he alleges such actions, which involve the Commission's setting the zoning question down as an agenda item on March 9th and 12th, are in excess of the power granted to it under the Charter by the State. Thus, the merits of the underlying zoning matter are not before us for consideration. Neither is the sufficiency of the complaint now before us, for the City and the developers have not cross-assigned as error the denial of a motion to dismiss the complaint.
The question before us is whether the lower court abused its discretion in refusing to grant a temporary injunction to preserve the status quo pending a final determination of the merits. We hold that the lower court did not abuse its discretion. The rule to be applied is that the relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury, and the complainant has the burden of proving the facts which entitle him to relief. 42 Am.Jur.2d Injunctions § 26, p. 761.
In the case of New Orleans Waterworks Co. v. New Orleans (1896), 164 U.S. 471, 481-482, 17 S.Ct. 161, 41 L.Ed. 518, the United States Supreme Court was called upon to decide whether the Circuit Court was correct in sustaining a demurrer to a bill of complaint, and dismissing the suit in equity. The relief requested was, inter alia, "that all the said acts, resolutions, and grants sought to be made by the defendant [City of New Orleans] to persons or corporations, * * * are null, void, and of *165 no effect * * *" id. at 478-479, 17 S.Ct. at 164. In two earlier cases the United States Supreme Court had determined that certain legislation limiting monopolistic rights to private utility corporations for the furnishing of water violated the contracts clause of the United States Constitution. Mr. Justice Harlan, speaking for the court, at pages 480-482, 17 S.Ct. at page 165, had occasion to discuss a problem quite similar to that posed in the instant interlocutory appeal:
"Ought the court to have proceeded to a decree, or held the bill to be sufficient for relief, as between the plaintiff and the city? * * *
"* * * If it be said that a final decree against the city enjoining it from making such grants in the future, will control the future action of the city council of New Orleans, and will, therefore, tend to protect the plaintiff in its rights, our answer is that a court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in character. It ought not to attempt to do indirectly what it could not do directly. In view of the adjudged cases, it cannot be doubted that the legislature may delegate to municipal assemblies the power of enacting ordinances that relate to local matters, and that such ordinances, if legally enacted, have the force of laws passed by the legislature of the state, and are to be respected by all. But the courts will pass the line that separates judicial from legislative authority if by any order or in any mode they assume to control the discretion with which municipal assemblies are invested, when deliberating upon the adoption or rejection of ordinances proposed for their adoption. The passage of ordinances by such bodies are legislative acts which a court of equity will not enjoin. [Citations omitted.] If an ordinance be passed, and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement. [Citations omitted.]
"* * * The mischievous consequences that may result from the attempt of courts of equity to control the proceedings of municipal bodies when engaged in the consideration of matters entirely legislative in their character, are too apparent to permit such judicial action as this suit contemplates. * * *"
Accord: McChord v. Louisville & N.R. Co. (1902), 183 U.S. 483, 22 S.Ct. 165, 46 L.Ed. 289; United States v. Los Angeles & S.L.R. Co. (1926), 273 U.S. 299, 314, 47 S.Ct. 413, 71 L.Ed. 651; but cf. City of Des Moines v. Continental Illinois Nat. Bank & Trust Co. of Chicago, 205 F.2d 729, 733 (8 Cir., 1953).
Our determination is not a final determination on the merits of the instant suit and should not be read as indicating any result upon a plenary appeal in the instant suit or any action thereafter commenced should the Commission enact the challenged zoning ordinance amendment. Pearce v. Pearce, Fla.App. 1957, 97 So.2d 329, 334.
For the reasons stated, the order appealed is affirmed and the constitutional stay writ is vacated.
It is so ordered.
CARROLL, Judge (dissenting).
I respectfully dissent. The denial by the trial court of the plaintiff's application for an injunction in this case was patently erroneous. It should be reversed, and the cause should be remanded with direction to the trial court to grant the injunction.
Here the plaintiff did not seek by injunction to control the decision or determination of the city commission on the merits of the application for rezoning, or to enjoin any deliberative action of the Commission upon which it had discretion, or upon which it had lawful authority to act. The minutes of a prior meeting of the *166 Commission show that the zoning application was rejected on second reading, upon consideration thereof after a full hearing. Under a clear provision of the same zoning ordinance under which the application for rezoning was made, it was provided that such an application for rezoning thus rejected on second reading could not be considered and acted on by the Commission until the lapse of one year, or unless within that time it should be re-presented upon the basis of a change of circumstances or a revised plan, and then only after action of the Commission electing to so entertain it when re-presented in such form.[1] Thus the announced or "threatened" action of the Commission which was sought to be enjoined was action prohibited by its ordinance and was a matter as to which the Commission had no discretion.
The majority decision affirming the denial of the injunction, while appearing to recognize that under the zoning ordinance the rejected application for rezoning could not lawfully come before the Commission again as scheduled, leaves the Commission free to consider the application contrary to its ordinance, and relegates the plaintiff to a subsequent suit to seek to have the action of the Commission declared invalid upon a claim of its illegality. This is on the assumption that the Commission will grant the application, which seems likely due to the fact that it has been rescheduled for consideration after having been rejected on second reading.
The argument of the appellees that the disposition of the matter by the Commission on second reading did not amount to a determination of the application for rezoning adverse to the applicant is unsound. The vote of two in favor of granting the application and two against the granting thereof amounted in law to a rejection and denial of the rezoning application. See Lupinacci v. Planning and Zoning Commission of Town of Darien, 153 Conn. 694, 220 A.2d 274; Steers Sand & Gravel Corp. v. Village Board of the Village of Northport, Sup., 129 N.Y.S.2d 403; Montgomery County Board of Appeals v. Walker, 228 Md. 574, 180 A.2d 865.
For the reasons stated, I would vote to reverse the ruling of the trial court in this cause.
NOTES
[1] The provision of the zoning ordinance which operates to prevent re-presentation of a rejected zoning change application, except after a stated period or upon other stated conditions, was quoted in part in the majority opinion. It reads as follows:

"Section 12.09 Limitations of Subsequent Applications. Whenever any application for a variance or change of zoning shall have been finally determined, no other or further application for a variance or change of zoning with reference to the particular property affected by said application, or with reference to other property similarly situated, will be considered for a period of one (1) year following the date of such action. Should conditions affecting such property materially change, in the opinion of the City Commission, or should a modified plan for a variance or rezoning be presented to the City Commission, either of which in the opinion of the Commission would justify action before the expiration of such one (1) year period, the Commission by four-fifths (4/5) majority may permit the filing of such application for a variance or rezoning, notwithstanding the provisions of this section."