RINGWOOD SOLID WASTE MANAGEMENT AUTHORITY, A
PUBLIC BODY CORPORATE AND POLITIC, PLAINTIFF,
v. BOROUGH OF RINGWOOD, A PUBLIC BODY COR-
PORATE AND POLITIC; FRANK E. FAHY, JOHN W.
WICHTERMAN, RICHARD J. STRAUB, WILLIAM HAN-
NON, DONALD KIRK, ROBERT J. MORAVSIK, JOHN
FEDELE, DEFENDANTS.

Superior Court of New Jersey
Law Division

October 24, 1974.

*Mr. John M. Running,* attorney for plaintiff.

*Messrs. Corrado, Corcoran & Sokalski,* attorneys for defendants (*Mr. Terence P. Corcoran,* appearing).

SUSSER, P. J. D. C., Temporarily Assigned. Plaintiff seeks to restrain the Borough of Ringwood from passing an ordinance which would abolish the Ringwood Solid Waste Management Authority (Authority), and for judgment declaring the proposed ordinance invalid.

The matter was first heard on the return day of an order to show cause seeking to temporarily restrain the borough from passing the ordinance. It was subsequently heard on motion for summary judgment to declare the ordinance abolishing the Authority as illegal and of no effect.

The facts giving rise to this litigation are not in dispute.

On October 9, 1970, pursuant to the provisions of the Solid Waste Management Authority's Law (*N. J. S. A.* 40:66A–32 *et seq.*), the Borough of Ringwood by ordinance created a public body corporate under the name of Ringwood Solid Waste Management Authority. Pursuant to the provisions of the enabling act, the mayor and governing body of Ringwood appointed five persons as members of the Authority and took all other essential action required under the statute to effectively organize and create the Authority. *N. J. S. A.* 40:66A–35(a), (c), (d).

The Authority, after its organization, received a grant from a private corporation of approximately 200 acres of land located in the Borough of Ringwood and proceeded to conduct its business as a solid waste management authority. It has entered into an agreement with the borough to permit municipal disposal of solid waste on lands owned by the Authority; has filed applications with the various state agencies in connection with the operation and proposed operation of landfill garbage disposal sites on lands owned by the Authority; has made payments in lieu of taxes to the borough for the lands owned by it, and in connection with the conduct of its business has incurred debts and also has bills due and owing to it.

In 1973 and 1974 the borough entered into extensive negotiations with the neighboring boroughs of Kinnelon, Butler, Bloomingdale, Riverdale, Pompton Lakes and the Township of Pequannock having as its aim the creation of a regional solid waste management authority to be known as the Lakeland Regional Solid Waste Management Authority. From these negotiations an agreement emerged which provided for the formation by the concerned municipalities of a regional authority under the provisions of *N. J. S. A.* 40:66A–32 *et seq.,* and more specifically under the provisions of *N. J. S. A.* 40:66A–35(b). The regional agreement provided, among other things, that the participating municipalities would enact parallel ordinances creating such regional authority.

On August 28, 1974 at a public meeting the Ringwood Borough Council introduced and passed on first reading an ordinance which would permit it to join in this pact for the purpose of conducting a regional solid waste management authority (Ordinance No. 1974–33).

*N. J. S. A.* 40:66A–35(e) provides

No governing body which may create or join in the creation of any solid waste management authority pursuant to this section shall thereafter create or join in the creation of any other solid waste management authority. No governing body of any municipality within a district shall create or join in the creation of any solid waste management authority except upon the written consent of the solid waste management authority and in accordance with the terms and conditions of such consent.

The term "district" referred to above is defined in the act as "the area within the territorial boundaries of the municipality or municipalities which created or joined in the creation of a solid waste management authority." Thus, by the creation of the Ringwood Solid Waste Management Authority on October 9, 1970 Ringwood had become a municipality within a waste management district and was subject to the provisions of *N. J. S. A.* 40:66A–35(e).

Because of this statutory prohibition, and since the governing body had committed itself to becoming a party to the

Lakeland Regional Waste Management Authority, it introduced simultaneously with Ordinance 1974–33 a companion ordinance (Ordinance 1974–32) repealing the 1970 Ordinance which created the Ringwood Solid Waste Management Authority. Ordinance 1974–32, which repealed the ordinance creating the Ringwood Solid Waste Management Authority, and ordinance 1974–33, which authorized the Borough of Ringwood to join in and become a party to the regional pact, were passed on first reading and were scheduled to be discussed at a public meeting on September 25, 1974, at which time the borough council was to vote on final passage.

This complaint was filed after first reading of the proposed ordinances in August 1974 and prior to the final passage of the ordinance which was scheduled for a public meeting on September 25. The thrust of the complaint is two-fold: first, by order to show cause to restrain the borough from adopting Ordinance 1974–32 an ordinance to repeal the ordinance which created the existing Ringwood Solid Waste Management Authority, and second, for a judgment determining that Ordinance 1974–32 is contrary to law, illegal and void.

We shall first deal with the order to show cause which seeks to restrain the governing body of Ringwood from acting to pass Ordinance 1974–32 at final public hearing on September 25. This matter was argued on September 20, and for the reasons stated below, a restraint was denied.

Court should not interfere with the legislative processes. The governing body of Ringwood had as yet not acted. It is true that the ordinance had received a first reading, but there still remained a period of gestation prior to enactment as law. It is improper to assume as fact that the Ringwood governing body would, after a subsequent public hearing, finally pass the ordinance. It would be an invalid interference with the public right to be heard at public meeting on September 25. To restrain would represent a too hasty judicial interference with legislative processes and a violation of the historic constitutional separation of powers.

■■ The law in this area is quite settled. A court cannot prohibit a legislative branch from meeting and passing an ordinance. *Harrison Land Co. v. Crucible Steel Co.,* 82 *N. J. Eq.* 414, 420 (Ch. 1913). The application for restraint is premature because the ordinance has not been passed. *Neptune v. Asbury Park,* 7 *N. J. Misc.* 5, 143 *A.* 867 (Sup. Ct. 1928). This court cannot and should not speculate as to the final language of the ordinance which may be passed by the governing body nor can it interfere with its ultimate decision, which conceivably could be non-passage, *Passaic Jr. Chamber of Commerce v. Passaic Housing Authority,* 45 *N. J. Super.* 381, 392 (App. Div. 1957); *Cape May and Schellerger's Landing v. Cape May,* 35 *N. J. Eq.* 419 (Ch. 1882); *New Orleans Waterworks Co. v. New Orleans,* 164 *U. S.* 471, 481, 17 *S. Ct.* 161, 41 *L. Ed.* 518, 524 (1896).

■ In the consideration of legislation governing bodies have discretionary powers to exercise, and the courts should not interfere with the legislative discharge of these powers even though they may be invalid when finally exercised. However, once legislation is passed, the courts can then set aside legally invalid legislation. *Bond v. Mayor, etc. Newark,* 19 *N. J. Eq.* 376, 383 (Ch. 1869).

For these reasons the restraint was denied and an order submitted accordingly. Nevertheless, the complaint, though premature, was retained so that if the borough council, after public meeting and final reading, did pass the proposed repealer ordinance, this court might then rule on its validity.

On September 25, after public hearing, the borough governing body passed Ordinances 1974–33 and 1974–32 on final reading and thereafter (since there was no dispute as to the facts) the question of the validity of ordinance 1974–32 was argued before the court on September 27.

The Solid Waste Management Authorities Law *N. J. S. A.* 40 :66A–32 *et seq.,* contains no provision for the dissolution of a solid waste management authority once it is created by

a municipality or municipalities. Whether with this state of the law a municipality may solely by its own ordinance rescind the ordinance creating the authority is a matter of first impression in this State and requires legal construction of the statute and those statutes *in pari materia* with it.

The sense of a law is gathered from its object, nature of the subject matter, the whole of the context and acts *in pari materia, Hackensack Water Co. v. Ruda*, 3 N. J. 139 (1949). Our Legislature, having been concerned with the environmental impact of garbage and solid waste materials disposal, passed a number of enabling acts which permitted municipalities either singly or in conjunction with other municipalities or counties, either singly or within regional groupings, to provide vital services for the disposal of garbage and solid waste materials.

The device has been in nearly all instances in the form of an independent authority with perpetual succession. Except for the nonprofit aspect, these authorities are very much similar to a public utility in that they have a specifically defined geographic area of operation, with complete freedom from competition in the sphere in which they operate.

It is quite clear that the Legislature intended the creation of various independent authorities as a means by which these entities would provide essential services in certain *quasi*-governmental areas, *i. e.*, parking, water, sewerage, disposal, incinerator plants, housing, redevelopment and solid waste disposal.

Here we are primarily concerned with a statute which has within it no provision, procedurally or otherwise, by which a municipality may dissolve the legal entity which it created.

This statute therefore is to be construed as a whole with reference to the system of legislatively created authorities of which it is a part. *Maritime Petroleum Corp. v. Jersey City*, 1 N. J. 287 (1949).

A study of the various acts passed by the Legislature from 1946 through 1974 clearly indicates a legislative intent

that no authority once created and organized may subsequently be dissolved except with the consent and active participation of the authority itself. The only execptions are in the cases of county authorities where the county can dissolve the authority it created and take over its obligations. County Improvement Authorities Law, *N. J. S. A.* 40:37A–47; First Class County Recreation Authority Law, *N. J. S. A.* 40:37B–4, and New Jersey Industrial Pollution Control Financing Law, *N. J. S. A.* 40:37C–4(d).

Usually, the provisions for dissolution give the creating governmental body the right to dissolve the authority prior to the appointment of its members, but generally after the members have been appointed the governmental body creating the authority cannot dissolve it except with the consent of the authority, with a prerequisite that there be no debts or obligations outstanding. County and Municipal Sewerage Authority Law, *N. J. S. A.* 40:14A–4(h); County-Municipal Water and Sewerage Disposal Authorities Law, *N. J. S. A.* 40:14B–13, and Municipal Port Authorities Law, *N. J. S. A.* 40:68A–38.

Obviously, it was the intention of the Legislature to give these creatures of statute an independence of their own so that they might properly function within their appropriate sphere. Practically all of the various authorities have the right to bond — a very necessary power for it to secure the facilities needed in connection with its operation, and a power that obviously and realistically could not be exercised in the existing market place without built-in restrictions regarding its dissolution. Hence, no dissolution without the authority's consent and while it has debts.

In addition to what has been stated regarding the restrictions on dissolution, the autonomy of authorities has been further buttressed by giving to them perpetual succession, with the power of condemnation and many of the inherent powers and functions of an operating utility. See Authorities, *supra*.

In some few instances the Legislature has gone so far as to make no provision for a dissolution of the authority. County Sewerage Authorities Law, *N. J. S. A.* 40:36A; Incinerator Authorities Law, *N. J. S. A.* 40:66A; Port Authorities Law, *N. J. S. A.* 40:68A. The Solid Waste's Management Act is almost word for word a replica of the 1948 Incinerator Authorities Law. The Incinerator Authorities Law and the Solid Waste's Management Act passed some 20 years later both have no provision for dissolution. Are we to assume a legislative oversight in 1948 was compounded again 20 years later, or it is more logical to accept this as part of a legislative pattern for purposes of bonding?

Even assuming such legislative oversight, the fact of non-action in this area — no provision for dissolution of the Authority by the creating governmental body — preempts the municipality from filling the void by its own prescribed act.

The powers of a municipality to act under a grant of authority from the Legislature has previously been before the courts. In *Beyer v. Mt. Holly Tp. Comm.,* 6 *N. J. Super.* 409 (Law Div. 1949), the town of Mt. Holly enacted a repealer ordinance as to the salaries of the members of the previously created Mt. Holly Sewerage Authority. In speaking of the power of the municipality to act where its right to act had been provided by the State Legislature, then Judge William Brennan stated:

It is true that a grant of power to enact an ordinance usually implies the power to amend, change or repeal the ordinance . . . But this is generally as to ordinances passed pursuant to a general grant of discretionary or regulatory authority when the power to legislate on the subject imports the power to pass more than one ordinance respecting it . . . But the general rule admits of an exception where the amending or repealing ordinance relates to an ordinance enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time prescribed by the Legislature. In such case the implication is excluded that the municipal legislative body was given any further jurisdiction over the subject than to do the one act.

■ The fact that municipalities have been granted broad police powers over matters of local concern and interest, *N. J. S. A.* 40:48-1, 40:48-2, and *N. J. Const.* (1947), Art. IV, § VII, par. 11, ordains liberal construction of the powers, does not change the present situation. "A municipality may be foreclosed from exercising power it would otherwise have if the state has sufficiently acted in a particular field." *Chester Tp. v. Panicucci,* 62 *N. J.* 94, 99 (1973).

"A succession of Supreme Court decisions has confirmed that the police powers delegated to municipalities in *N. J. S. A.* 40:48-2 is coterminous with the police powers of the State Legislature, unless there is a state preemption or the subject matter necessarily lends itself to general and uniform, rather than local, legislative control, even in the absence of preemption." [*Lehrhaupt v. Flynn,* 129 *N. J. Super.* 327, 331 (Ch. Div. 1974)]

*Inganamort v. Fort Lee,* 62 *N. J.* 521, 536 (1973); *New Jersey Builders Ass'n v. Mayor, E. Brunswick Twp.,* 60 *N. J.* 222, 226-227 (1972); *Summer v. Teaneck,* 53 *N. J.* 548, 552 (1969); *Moyant v. Paramus,* 30 *N. J.* 528, 542 (1959); *Fred v. Old Tappan Mayor and Council,* 10 *N. J.* 515, 519 (1952).

■ Here the State preempted the municipality from acting beyond the powers which were delegated to it by the enabling statute. If the Legislature intended the creating governing body to exercise control over the authority, it would not have designated the authority as "a public body politic and corporate constituting a political subdivision of the State." *N. J. S. A.* 40:66A-38. All of the powers of the authority granted to it under the statute, such as bonding, acquiring property, etc., are done in the name of the authority and not in the name of the creating governmental body. Once the authority was created, the Legislature specifically limited the power of the creating body to but one function, appointing its members.

Throughout the statute a differentiation is made as to the authority and the locality *N. J. S. A.* 40:66A-42, 43. Implicit from this construction is the distinction the Legisla-

ture draws between the authority and the local governing body; they are separate and distinct entities whose interrelationship, if any, is based on the enabling statute.

By attempting to abolish the Ringwood Solid Waste Management Authority through a repealer ordinance, the borough has gone beyond the scope of powers granted it by *N. J. S. A.* 40:66A–32 *et seq.* Those powers were limited solely to creating the Authority by ordinance and to appointing its members. To this extent, once the municipality acted, it could proceed no further. The ordinance passed by the Borough of Ringwood (No. 1972–32) repealing the ordinances creating plaintiff authority is null and void.