## GAS & ELECTRIC SECURITIES CO. v. MANHATTAN & QUEENS TRACTION CORPORATION.

### Petition of BEGG·et al.

(Circuit Court of Appeals, Second Circuit. February 24, 1920.)

No. 30.

1. **Appeal and error ⊂⇒71(3)—Order granting permanent injunction appealable as "final order."**

An order, made on application of receivers, making permanent a temporary injunction restraining a city from considering or adopting a proposed resolution affecting rights of defendant in the cause "pending further order in the action," *held* a "final order," and appealable within six months, under Comp. St., § 1647.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Order.]

2. **Receivers ⊂⇒73—Petition in receivership suit held proper remedy against stranger for protection of property.**

Receivers appointed for a street railroad company, defendant in a creditors' suit, may proceed by petition and rule in such suit to restrain a city, although not a party, from taking action to forfeit the franchise and property of defendant.

3. **Municipal corporations ⊂⇒690—Granting and repealing of franchises exercise of legislative power.**

The board of estimate and apportionment of the city of New York, in the granting and repealing of franchises in the streets under authority vested in it by the city charter, acts in the exercise of legislative power and in a governmental capacity.

4. **Injunction ⊂⇒77(1)—Not granted to restrain legislative action of municipality.**

The general rule is that a court of equity will not grant an injunction to restrain a municipal corporation from the exercise of legislative or governmental power, even though the contemplated action may be in disregard of constitutional restraints and may impair the obligation of a contract.

5. **Municipal corporations ⊂⇒61—May exercise legislative power by resolution.**

A city's legislative power may be exercised by either an ordinance or a resolution, except as its charter or the general law otherwise provides.

6. **Street railroads ⊂⇒61(1)—Franchise held subject to forfeiture for nonperformance of conditions.**

Under an ordinance granting a franchise, which constitutes a contract between a city and a street railroad company, and provides that on failure to construct and operate the railway within the time fixed "the right herein granted shall cease and determine," in order to prevent forfeiture the company is bound to perform in accordance with its terms, unless performance is rendered impossible by act of God, by the law, or by the other party.

7. **Municipal corporations ⊂⇒690—In granting franchise, may prescribe terms and conditions.**

If the terms and conditions of a franchise which the Legislature has authorized a municipal body to grant have not been determined in advance by the Legislature, the terms and conditions of the grant and of its forfeiture are to be determined by the municipal body under its delegated authority, and in so doing it acts legislatively, both as respects the grant and the forfeiture.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

266 F.—40

**8. Street railroads ☞28(4)—Municipal order for extension held valid.**

Under a franchise contract requiring a street railroad company to extend its line when ordered by the city, "provided that the title to the streets involved has been vested in the city and that said streets have been regulated and graded," the fact that certain small items of work, not preventing the extension, remained to be done before the streets were regulated and graded to their full width, *held* not to invalidate an order for the extension.

**9. Street railroads ☞61(2)—Franchise contract held to provide for forfeiture of entire grant.**

In a franchise grant to a street railroad company, whose line it was intended by the parties should be built in sections as the territory to be served became settled, a provision that, on a failure to construct any portion of the road as required, "the right herein granted shall cease," *held* to apply to the entire grant.

**10. Street railroads ☞61(3)—Forfeiture of franchise held not waived by acceptance of taxes.**

The acceptance of a street railroad company's payment of franchise taxes by the administrative officers of a city is not a waiver of rights of the municipality to claim a forfeiture of the franchise for nonperformance of its conditions.

**11. Equity ☞24—Cannot relieve from forfeiture provided for by express terms of statutory legislation.**

While a court of equity may relieve from forfeiture in a proper case, it is without power to relieve a street railroad company from a forfeiture incurred by failure to comply with the terms of a franchise contract made under and by virtue of statutory legislation of the state.

**12. Judgment ☞216—"Interlocutory order" defined.**

An "interlocutory order" is one entered between commencement and end of suit or action, which denies some point or matter, but which is not a final decision of the matter in issue.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interlocutory Order.]

**13. Injunction ☞132—"Interlocutory injunction" defined.**

An "interlocutory injunction" is one granted prior to the final hearing and determination of the matter in issue, and which is to continue until answer, or until the final hearing, or until the further order of the court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interlocutory Injunction.]

**14. Judgment ☞217—"Final decree" defined.**

A "final decree" is not necessarily the last order in the case, as orders sometimes follow merely for the purpose of carrying out or executing the matters which the decree has determined; but, when it finally fixes the rights of the parties, it is final.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

**15. Judgment ☞216—"Interlocutory decree" defined.**

A decree is "interlocutory," and not final, if the further action of the court in the cause, as distinguished from proceedings necessary to execute the decree, is necessary to give completely the relief contemplated by the court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interlocutory Decree or Judgment.]

**16. Constitutional law ☞50—"Legislative power" defined.**

"Legislative power" is the authority exercised by that department of government which is charged with the enactment of laws, as distinguished from the executive and judicial functions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Legislative Power.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**17. Constitutional law ⊂⇒251—"Due process of law" does not invariably require formal judicial proceedings.**

Under ordinary circumstances, "due process of law" implies a formal judicial proceeding; but such a proceeding is not invariably required.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

**18. Highways ⊂⇒70—Municipal corporations ⊂⇒269 (3)—"Grade" defined.**

To "grade" a street or highway, strictly speaking, is to establish a level by mathematical points and lines, and then to bring the surface of the street or highway to the level by the elevation or depression of the natural surface to the line fixed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Grade.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Gas & Electric Securities Company against the Manhattan & Queens Traction Corporation. In the matter of petition of William R. Begg and Arthur Carter Hume, receivers of defendant, against the City of New York. From the order, the City appeals. Reversed.

This cause comes here from the United States District Court for the Eastern District of New York, on order granting and continuing an injunction. The order was originally dated and entered on June 15, 1918, and was resettled and re-entered on August 24, 1918. The order from which the appeal is taken grants and continues an injunction until further order of the court against the city of New York, its board of estimate and apportionment, and all public officials, employés, and servants of the city of New York, from passing a proposed resolution forfeiting or affecting the franchise of the Manhattan & Queens Traction Corporation, dated October 29, 1912, and from taking all of the property of said corporation, then in the hands of receivers appointed by the United States District Court for the Eastern District of New York, without compensation and without proceedings at law or in equity, or from in any way interfering with that company. The above order was issued to enjoin the city of New York from passing a resolution forfeiting the franchise and railway of the defendant corporation on the ground that the corporation had not complied with the terms of the franchise contract and completed its line of road within the period prescribed. The facts more fully appear in the opinion.

William P. Burr, Corp. Counsel, of New York City (Vincent Victory, of New York City, of counsel), for appellant.

Frueauff, Robinson & Sloan, of New York City (Robert S. Sloan, of New York City, of counsel), for appellee receivers.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). It appears that the city of New York had entered into a franchise contract with the Manhattan & Queens Traction Corporation under date of October 29, 1912, which franchise contract was amended on July 21, 1913, and on January 21, 1916. In reliance upon this contract the Manhattan & Queens Traction Corporation constructed, equipped, and put in operation a double track street surface electric railway between the Long Island plaza of the Queensboro Bridge at Jackson avenue,

upon and along Thomson avenue and other streets and avenues in the borough of Queens, to the intersection of Sutphin road and Lambertville avenue, a distance of over 10 miles. The contract required that this part of the railway should be completed and in operation on or before May 1, 1916. The contract in this respect was complied with and the railway has been in continuous operation for this distance of 10 miles from April 26, 1916. Then as to the remainder of the line the contract under the amendment of January 21, 1916, provided that it was to be completed "within such time or times as may be directed by resolution of the board [of estimate and apportionment] upon recommendation of the president of the borough, provided that title to the streets involved has been vested in the city and that said streets have been regulated and graded." At a meeting of the board of estimate and apportionment held on February 16, 1917, the president of the borough of Queens offered and there was adopted a resolution which directed the Manhattan & Queens Traction Corporation to commence construction of the remaining portion of its street surface railway from the intersection of Sutphin road and Lambertville avenue to the intersection of Central avenue and Springfield road within 30 days, and to complete and put the same in operation within 6 months from the date of the approval of the resolution by the mayor. The resolution was approved by the mayor on February 23, 1917. Under the terms of the resolution, therefore, it was incumbent on the corporation to complete and put in operation the remaining portion of the line therein mentioned, and which comprised only 3.3 miles, on or before August 23, 1917.

That the line of railway was not completed in accordance with the resolution is conceded, and the explanation which is made for the failure to comply with it is that the resolution was void as the city of New York was not in a position to insist that the Traction Corporation should make the extension, owing to the fact that title to the streets involved in the extension was not at the time vested in the city, and all of the streets were not regulated and graded to their legal grade and full width, as was required by a condition precedent in the franchise contract. Whether these claims are well founded will be later considered.

That the city did not think that there was legal excuse for the failure to complete the road within the period specified is apparent; for on October 19, 1917, the board of estimate and apportionment passed a resolution directing the Traction Corporation to show cause on November 9, 1917, why a resolution declaring forfeited the contract, dated October 29, 1912, and its amendments, should not be adopted, and why said resolution should not provide that the railway constructed and in use by virtue of said contracts shall thereupon become the property of the city of New York without proceedings at law or in equity.

On October 19, 1917, the division of franchises of the board of estimate and apportionment prepared a form of proposed resolution of forfeiture to be submitted to the board, which appears in the

margin.[1] This resolution was to come up for action at a meeting of the board on December 21, 1917.

The receivers of the defendant corporation, being of the opinion that this threatened action of the city was contrary to the franchise contract as amended, and that it was illegal, unjust, and inequitable, petitioned the court below which was the court that had appointed them, for a temporary restraining order, which was granted. Thereafter they obtained the order appealed from, restraining the passage of the resolution above set forth.

[1] "Whereas, pursuant to a resolution of the board of estimate and apportionment adopted July 15, 1912, and approved by the mayor July 16, 1912, a contract, dated October 29, 1912, was entered into between the city of New York and the South Shore Traction Company for the construction, maintenance, and operation of a street surface railway upon and over the Queensboro Bridge and upon and along various streets and avenues in the borough of Queens, between said bridge and the Nassau county line, as is more fully set forth and described in section 2 of said contract; and

"Whereas, by resolution adopted by the board of estimate and apportionment November 21, 1912, and approved by the mayor November 22, 1912, said board granted consent to the South Shore Traction Company to assign, transfer, and set over all rights and privileges granted by said contract of October 29, 1912, so that the same should pass to and vest in the Manhattan & Queens Traction Corporation; and

"Whereas, such assignment of said rights and privileges was subsequently made, and said Manhattan & Queens Traction Corporation took possession of the property of said South Shore Traction Company, and took over the operation of the local service maintained on the Queensboro Bridge by said South Shore Traction Company, at midnight on December 27, 1912; and

"Whereas, pursuant to a resolution of the board of estimate and apportionment adopted July 3, 1913, and approved by the mayor on the same day, said contract of October 29, 1912, was modified and amended by a contract dated July 21, 1913, entered into between the city of New York and said Manhattan & Queens Traction Corporation; and

"Whereas, pursuant to a resolution of the board of estimate and apportionment adopted December 17, 1915, and approved by the mayor December 18, 1915, said contract of October 29, 1912, as amended by said contract of July 21, 1913, was further modified and amended by contract dated January 21, 1916, entered into between the city of New York and the said Manhattan & Queens Traction Corporation; and

"Whereas, section 3, seventh, of said contract of October 29, 1912, as amended by said contract of January 21, provides as follows:

" 'Seventh. The company shall complete and put in operation terminal of the Queensboro Bridge to the intersection of the tracks of the Long Island Railroad with Thomas avenue at or near Greenpoint avenue on or before February 13, 1913, from the intersection of the tracks of the Long Island Railroad Company with Thomson avenue to the intersection of Thomson avenue and Broadway on or before April 30, 1913, from the intersection of Thomson avenue and Broadway to the proposed new Long Island Railroad station in the former village of Jamaica, on or before January 31, 1914,

" 'The company shall complete and put in operation that portion of its railway herein authorized between the present terminus thereof at the Long Island Railroad Company's station at Jamaica, and the intersection of Sutphin road (Guilford street) and Lambertville avenue (Pacific street), on or before May 1, 1916, and the remainder of its said railways between said intersection of Sutphin road (Guilford street) and Lambertville avenue (Pacific street) and the city line at Central avenue within such time or times as may be directed by resolution of the board upon recommendation of the president of the borough: Provided that title to the streets involved has been vested in the city and that said streets have been regulated and graded.

" 'Upon the failure of the company to complete the construction and place

[1] Before considering this case on the merits, it is necessary to determine a preliminary question as to whether the appeal was taken within the time prescribed by the Judicial Code.. It is elementary that at common law a writ of error lies only from final judgments, and that. the remedy by appeal is unknown to the common law, being employed for the review of causes in equity. According to the practice in equity as administered in England, appeals lay from interlocutory as well as from final orders or decrees. But under the judicial system of the government of the United States from the beginning until

in operation any of the said portions of the railway on or before the date or time herein specified, the right herein granted shall cease and determine, and all sums or securities paid to the city, or deposited with the comptroller as security for performance by the company of the terms and conditions of this contract, as herein provided, shall be forfeited to the city without action by the city: Provided, however, that the board may extend the time within which to complete the construction and place the railway in operation as it may deem just and equitable.'

"Whereas, by resolution adopted by said board of estimate and apportionment February 16, 1917, and approved by the mayor February 23, 1917, said Manhattan & Queens Traction Corporation was directed to commence construction of that portion of its street surface railway authorized by said contract of October 29, 1912, as amended by said contract of July 21, 1913, from the intersection of Sutphin road and Lambertville avenue to the intersection of Central avenue and Springfield road, on or before March 23, 1917, and to complete and put in operation said portion of its street surface railway on or before August 23, 1917; and

"Whereas, said Manhattan & Queens Traction Corporation has failed or neglected to complete construction of and put in operation that portion of its street surface railway authorized by said contract of October 29, 1912, as amended by said contract of July 21, 1913, from the intersection of Sutphin road and Lambertville avenue to the intersection of Central avenue and Springfield road, on or before August 23, 1917; and

"Whereas, section 5, thirteenth, of said contract of October 29, 1912, provides as follows;

" 'Thirteenth. In case of any violation or breach of failure to comply with any of the provisions herein contained, this contract may be forfeited by a suit brought by the corporation counsel on notice of ten (10). days to the company, or at option of the board by resolution of said board, which said resolution may contain a provision to the effect that the railway constructed and in use by virtue of this contract shall thereupon become the property of the city without proceedings at law or in equity: Provided, however, that such action by- the board shall not be taken until the board shall give notice to the company to appear before it on a certain day, not less than ten (10) days after the date of such notice, to show cause why such resolution declaring the contract forfeited should not be adopted. In case the company fails to appear, action may be taken by the board forthwith.'

"Whereas, at a meeting of this board held October 19, 1917, the following resolutions were adopted:

" 'Resolved, that the Manhattan & Queens Traction Corporation be and it is hereby notified, under and pursuant to section 5, thirteenth, of the contract dated October 29, 1912, by and between the city of New York and the South Shore Traction Company, which said contract was, with the consent of the board of estimate and apportionment given by resolution adopted November 21, 1912, and approved by the mayor November 22, 1912, assigned to the Manhattan & Queens Traction Corporation, to appear before the board of estimate and apportionment on November 9, 1917, at a meeting of said board to be held on said date, at 10:30 o'clock a. m., in room 16, City Hall, borough of Manhattan, and show cause why a resolution declaring forfeited the contract dated October 29, 1912, granting a franchise to the South Shore Traction Com-

the passage in 1891 of the act establishing the Circuit Court of Appeals an appeal would lie only from final judgments or decrees. Smith v. Vulcan Iron Works, 165 U. S. 518, 522, 17 Sup. Ct. 407, 41 L. Ed. 810. Act 1891, c. 517, § 7, provided that, where upon a hearing in equity an injunction shall be granted, continued, refused, or dissolved by an interlocutory order or decree, or an application to dissolve an injunction shall be refused, an appeal may be taken from such interlocutory order or decree to the Circuit Court of Appeals. In 1900 the act of 1891 was amended so that an appeal might also

pany and subsequently assigned to the Manhattan & Queens Traction Corporation. and the contracts dated July 21, 1913, and January 21, 1916, by and between the city of New York and the Manhattan & Queens Traction Corporation, amending said contract dated October 29, 1912, should not be adopted, and why such resolution shall not provide that the railway constructed and in use by virtue of said contracts shall thereupon become the property of the city of New York without proceedings at law or in equity; and be it further

" 'Resolved, that the secretary of this board be and he hereby is directed to forward to the Manhattan & Queens Traction Corporation copies of these resolutions, and notify said corporation, in writing, that on the aforementioned date, at said time and place, said corporation mentioned will be allowed a hearing before final action is taken.'

"And whereas, on October 19, 1917, a copy of the aforesaid resolution was forwarded to said Manhattan & Queens Traction Corporation and said corporation notified, in writing, that it would be allowed a hearing on November 9, 1917, before final action is taken; and

"Whereas, such hearing was held on November 9, 1917, upon request of the acting president of the borough of Queens was continued to November 16, 1917, when it was continued to December 21, 1917, when it was continued to January 18, 1918, when it was again continued and was concluded after hearing Robert S. Sloan, counsel to the corporation; and

"Whereas, in the opinion of the board of estimate and apportionment, the corporation has failed to comply with the provisions of said contract of October 29, 1912. as amended by said contracts of July 21, 1913, and January 21, 1916, the violation or breach of which provisions renders the said contracts liable to forfeiture; and

"Whereas, due deliberation having been had, the board of estimate and apportionment hereby determines that the Manhattan & Queens Traction Corporation has broken, and failed and neglected to comply with, the provisions of the contract dated October 29, 1912, as amended July 21, 1913, and the contract dated January 21, 1916, and said consents, franchises, and contracts should be forfeited to the city of New York on account of such violation, breach, and default, and the railway constructed and in use under and by virtue of said contracts shall thereupon 'become the property of the city of New York: Now, therefore, be it

"Resolved, that the board of estimate and apportionment, under and pursuant to the provisions of section 5, thirteenth, of the said contract dated October 29, 1912, herein and hereby declares forfeited to the city of New York the contract dated October 29, 1912, between the city of New York and the Manhattan & Queens Traction Corporation, granting a franchise to the said Corporation, and the contracts dated respectively July 21, 1913, and January 21, 1916, modifying and amending said contract dated October 29, 1912; and be it further

"Resolved, that the railway, constructed and in use by virtue of said contracts dated October 29, 1912, July 21, 1913, and January 21, 1916, shall, from and after this date, become the property of the city of New York without proceedings at law or in equity; and be it further

"Resolved, that the secretary of this board be and he is hereby directed to forward a copy of these resolutions to the Manhattan & Queens Traction Corporation."

be taken from an interlocutory order appointing a receiver. Act 1900, c. 803. With these exceptions the appellate jurisdiction of this court continues restricted to final orders or decrees.

It is said in this case that the appeal was not taken in time, and the receivers on that ground have moved to dismiss. The order granting and continuing the injunction was re-entered and resettled on August 24, 1918. The appeal therefrom was taken on December 5, 1918. The contention is that the order is an interlocutory one, and that as appeals from interlocutory orders are required by section 129 of the Judicial Code to be taken within 30 days from the entry of such order, the appeal was not in time. U. S. Compiled Statutes Ann. 1916, vol. 2, p. 1444, § 1121. If the order is a final one, it is admitted that the appeal was taken in time, as such appeals may be taken at any time within six months after the entry of the order. 26 Stat. p. 829; Barnes' Fed. Code 1919, § 1386; U. S. Compiled Statutes, 1916 Ann. vol. 3, p. 3266, § 1647.

[12-15] An interlocutory order is one entered between commencement and the end of a suit or action, which denies some point or matter, but which is not a final decision of the matter in issue. Bouvier's Law Dictionary. An interlocutory injunction is one granted prior to the final hearing and determination of the matter in issue, and which is, to continue until answer, or until the final hearing, or until the further order of the court. Its object is to maintain the status quo, to maintain the property in its existing condition and prevent further or impending injury, and not to determine the rights of the parties. In re Sharp, 87 Kan. 504, 124 Pac. 532, Ann. Cas. 1913E, 460; Nelson v. Brown, 59 Vt. 600, 10 Atl. 721. In Klein v. Independent Brewing Association, 231 Ill. 594, 83 N. E. 434, it is said that a final decree is not necessarily the last order in the case, as orders sometimes follow merely for the purpose of carrying out or executing the matters which the decree has determined; but when it finally fixes the rights of the parties it is final and may be reviewed. In Collier v. Seward, 113 Va. 228, 74 S. E. 155, a decree is said to be interlocutory, and not final, if the further action of the court in the cause, as distinguished from proceedings necessary to execute the decree, is necessary to give completely the relief contemplated by the court.

A preliminary injunction was issued on December 19, 1917, and the city was directed to show cause on December 26, 1917, why the temporary injunction should not be made permanent. After a full hearing on the merits the order as resettled and entered on August 24, 1918, reads as follows:

"Ordered and decreed that the motion of the receivers for a permanent injunction, brought on by the said order to show cause, dated and entered herein December 19, 1917, be and the same hereby is granted, without prejudice to any further or other application to this court for the enforcement of any claim or right of the city of New York as to said matters, and it is further ordered and decreed that the temporary injunction, granted December 19, 1917, be made permanent pending further order in the action."

The order enjoined the persons specified therein "from moving, considering, voting on, amending, adopting, or in any manner pass-

ing" the resolution heretofore referred to. The fact that the order was without prejudice to any further application to the court for the enforcement of any of the rights of the city certainly cannot have the effect of converting what is otherwise a final order into an interlocutory one. The injunction meant the end of the matter so far as the particular judge who issued it was concerned, except that it did not include a change of mind on his part. The order goes just as far and lasts just as long as the District Court is possessed of any authority to issue it, and is therefore "final," and therefore appealable within the six months period. It is clearly a final order within the rule laid down by this court in Odell v. H. Batterman Co., 223 Fed. 292, 295, 138 C. C. A. 534, 537. In that case the court below entered an order which denied a request to be permitted to sue the receivers in ejectment. This court held the order was a final order from which an appeal could be taken. We said:

"Under the decisions an adjudication is a final appealable order, if it involves a determination of a substantial right against a party in such a manner as leaves him no adequate relief, except by recourse to an appeal. In the suit at bar appellant claims a legal right to immediate possession of the premises, and asserts that he is entitled to have that right determined with all reasonable speed. So much of the order appealed from as denied appellant's application was undoubtedly a final order, inasmuch as it definitely and conclusively determined the proceeding which appellant had instituted. The effect of the order, as we have pointed out, is to leave appellant without relief until the receivership is terminated. When that will be cannot be predicted. The receivership is a consent receivership and capable of indefinite duration."

We adhere to what was said in the above case, and think it decisive of this on the particular matter now under discussion.

[2] There remains to be considered, before passing to the merits, the question whether the receivers followed the proper procedure in bringing the matter before the court by a petition in the suit in which they were appointed, although the party against whom the petition is filed is not a party in the original action; and this question we think must be answered in the affirmative. The receivers were appointed in a judgment creditors' suit in equity brought in the United States District Court for the Eastern District of New York by the Gas & Electric Securities Company, a Delaware corporation, against the Manhattan & Queens Traction Company. The receivers entered on their duties on November 15, 1917, and found the city of New York threatening to take action on December 21, 1917, for the forfeiture of the franchise and the property of the company, over which they were appointed receivers. To protect the property in their hands the receivers applied for injunctive relief by petition in the receivership action. The city claims that this was error, and that the receivers should have proceeded by plenary suit or by ancillary bill, and not in a summary manner on petition and rule made in the receivership action. The city relies on what is said in Blair v. City of Chicago, 201 U. S. 400, 449, 450, 26 Sup. Ct. 427, 50 L. Ed. 801, where the right to proceed in such a case by ancillary bill is asserted. The court did not, however, decide that an ancillary bill was the only way in which the receivers could proceed in such cases. In a case

in the Circuit Court of Appeals for the Sixth Circuit (City of Shelbyville, Ky., v. Glover, 184 Fed. 234, 106 C. C. A. 376), the receiver in a case like the present proceeded by petition in the suit in which he was appointed, although the proposed defendant was not a party to such suit. It was held that this is not an improper way to proceed, when the rights of the proposed defendant can be as fully protected in such proceeding as in a separate suit, which is a matter to be determined by the court in the exercise of its discretion. We are disposed to take the same view of the matter, at least in a case where the substance of the petition sets forth a matter which is really ancillary to the main action, so that an ancillary bill could have been filed; and that an ancillary bill might have been filed in this case we think is clear. See Pell v. McCabe, 256 Fed. 512, 515, 168 C. C. A. 18, where the purposes for which an ancillary suit may be maintained are stated; and see Hume v. City of New York, 255 Fed. 488, 166 C. C. A. 564.

[3] The petition being properly before the court, we are brought to inquire whether the court had power to restrain the board of estimate and apportionment from proceeding to declare the forfeiture. The franchise contract dated October 29, 1912, provided in section 5 that the grant to the company to construct, maintain, and operate its railway over the line therein defined "was subject to the following conditions, which shall be complied with by the company." Then followed the conditions, and among them was a provision that on failure to comply with any of the provisions of the contract the contract might be forfeited by a suit brought by the corporation counsel, or at option of the board by resolution of said board. The insertion of such a provision in the contract was required by the charter of the city, which contains the following:

"Every grant shall make adequate provision by way of forfeiture of the grant, or otherwise, to secure efficiency of public service at reasonable rates. * * *" Greater New York Charter (chapter 378 of the Laws of 1897, as amended by chapter 466 of the Laws of 1901, and chapter 629 of the Laws of 1905) § 73.

The power of a municipal corporation to grant a conditional consent to a railroad in its streets is not open to controversy in the state of New York. Matter of Quinby v. Public Service Commission, Second District, 223 N. Y. 244, 259, 119 N. E. 433, 3 A. L. R. 685. The condition, if it touches the future operation of the road, has the force of a condition subsequent, and if its terms are not fulfilled the consent may be revoked. Matter of International Railway v. Public Service Commission, Second District, 226 N. Y. 474, 124 N. E. 123. What the city of New York was proposing to do was to revoke its consent, on the ground that the terms of the contract had not been complied with.

[16] The exercise of the power to grant and to revoke had been transferred by law from the board of aldermen or common council of the city to the board of estimate and apportionment by an amendment to the charter of the city. Laws N. Y. 1905, vol. 2, c. 629, p. 1535.

And in Wilcox v. McClellan, 185 N. Y. 9, 18, 77 N. E. 986, 987, it is said:

"If, in the judgment of the Legislature, the board of estimate and apportionment was the proper body to intrust with the granting of franchises, we are unable to see wherein any right of the board of aldermen or of any other officer or individual has been unduly invaded."

Under the legislation referred to the control of the streets, and the power of granting and repealing franchises of street railways, has been transferred to the board of estimate and apportionment, and in the exercise of that power the city claims that the board is in the exercise of legislative power. Prior to this legislation, and from the date of the Dongan Charter, the common council or board of aldermen had exercised the legislative power of the city of New York. Ghee v. Northern Union Gas Co., 158 N. Y. 510, 512, 516, 53 N. E. 692. By legislative power is meant the authority exercised by that department of government which is charged with the enactment of laws, as distinguished from the executive and judicial functions; and the right of municipal corporations to exercise the legislative function under authority conferred by the Legislature cannot be challenged.

In granting a franchise to occupy the streets, the board is acting in a purely governmental capacity. It certainly cannot be said to be acting in any private or proprietary capacity. In passing the resolution declaring the grant at an end, it equally acts in a governmental capacity, as the agent of the state, and for the promotion of the public good. Edson v. Olathe, 81 Kan. 328, 331, 105 Pac. 521, 36 L. R. A. (N. S.) 861.

[4] The general rule is that a court of equity will not issue an injunction to restrain a municipal corporation from the exercise of legislative or governmental power, even though the contemplated action may be in disregard of constitutional restraints and may impair the obligation of a contract. New Orleans Waterworks Co. v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Dillon's Municipal Corporations (5th Ed.) vol. 2, § 582; McQuillin's Municipal Corporations, vol. 5, § 2503, and volume 1, § 705.

In High on Injunctions (4th Ed.) vol. 2, § 1243, p. 1250, the rule is correctly stated when it is said to be—

"unquestionably true that purely legislative acts, such as the passage of resolutions, or the adoption of ordinances by a municipal body, even though alleged to be unconstitutional and void, will not be enjoined, since it is not the province of a court of equity to interfere with the proceedings of municipal bodies in matters resting within their jurisdiction, or to control in any manner the exercise of their discretion. * * * And while courts of equity will not enjoin municipal bodies from the passage of ordinances or resolutions, the courts may and will, on a proper case being shown, prevent their enforcement, and for this purpose may enjoin proceedings thereunder which would otherwise result in irreparable injury."

The subject is considered at some length in 5 Pomeroy's Equity Jurisprudence, §§ 339, 340, the conclusion reached being in accord with what has been above stated, and it is added that the doctrine is alike applicable to resolutions and ordinances. The opinion of Judge Magruder in Stevens v. St. Mary's Training School, 144 Ill. 336, 32

N. E. 962, 18 L. R. A. 832, 36 Am. St. Rep. 438, makes a most thorough examination of the question, reviews the decided cases, and reaches the same conclusion.

The court below in granting the injunction said:

"The injunction is not asked against the legislative power of the state, but against threatened action by the city in taking property as to which the resolution of the board of estimate would be a step in the acquisition of that property. Such an injunction is within the authority of the court and the motion will be granted."

[5] If this statement means that a distinction exists between the right to enjoin the legislative power of the state and that of a municipal corporation, we know of no authority for making the distinction. If it means that the passage of the contemplated resolution does not involve an exercise of legislative power, being a resolution, instead of an ordinance, we are unable to agree in that conclusion. A city's legislative power can be exercised by either an ordinance or by a resolution, except as its charter or the general law otherwise provides. Bouvier defines "resolution" as:

"An agreement to a law or other thing adopted by a Legislature or popular assembly."

And our attention has not been called to any provision in the charter of the city of New York which requires the board of estimate and apportionment to act otherwise than by resolution in such a matter as the one under consideration.

Counsel for the receivers say in their brief that—

"The act of the board of estimate and apportionment in granting a franchise to a private corporation is not a legislative act; a fortiori, the revocation of a franchise contract, for a claimed failure to comply with certain of its terms, is not a legislative act."

The granting of a franchise is not a judicial, and under our system not an executive, act. If it is not legislative, we do not know how its action is to be classified. It is certainly acting in a governmental capacity. To say that a state or a city does not legislate when it grants a franchise, because acceptance by the incorporators is necessary, is a proposition we are not prepared to adopt.

[17] We are aware that there are cases which tend to support the doctrine that the forfeiture of a franchise is a judicial question, to be adjudicated in a direct proceeding brought by the state through its Attorney General. There is also a strong line of decisions to the contrary. Under ordinary circumstances, due process of law implies a formal judicial proceeding; but such a proceeding is not invariably required. See Held v. Crosthwaite, 260 Fed. 613, 618, 625, —— C. C. A. ——.

[6] In the case now before the court the franchise contract expressly provided that, if the company did not complete the construction and place in operation the railway on or before the dates specified, "the right herein granted shall cease and determine." We are satisfied that the company did not comply with its contract. It did not construct and put in operation its railway within the time allowed it

for the purpose, and because it did not do so its franchise automatically ceased and determined. The reasons put forward for not having complied with the contract in the affidavits presented to the court afford no excuse for the failure to perform. The parties to a contract are bound to perform it according to its terms, unless performance is rendered impossible by the act of God, by the law, or by the other party. Performance is not excused by unforeseen difficulties, or because it has become unexpectedly burdensome. That times were hard, that the company was in financial difficulties, that labor and materials had excessively advanced, and that it was impossible in a business sense to go ahead with the work, may all have been reasons which might have been addressed to the city in an appeal to have the time for the completion of the contract extended, but they afforded no legal excuse for the failure to perform.

[7] The resolution which the board is enjoined from passing proposed two distinct things: A declaration of the forfeiture of the franchise, and a declaration of the forfeiture of the railway constructed and in use, which "shall from and after this date become the property of the city of New York without proceedings at law or in equity." The board, as we have seen, has been given the legislative power of granting a franchise, and directed by the law-making body of the state to make provision "by way of forfeiture of the grant." If the franchise is the only thing the city can legislatively grant, the franchise is the only thing it can legislatively forfeit; but if the terms and conditions of a grant, which the Legislature has authorized the municipal body to confer, have not been determined in advance by the Legislature, and in this case they had not been, the terms and conditions of the grant and of the forfeiture are to be determined by the municipal body under its delegated authority, and in so doing it acts legislatively, both as respects the grant and the forfeiture. In such cases it has been held that, if the company accepts the benefit of a grant, it takes subject to the conditions attached thereto, and is thereby estopped to contest the validity of the conditions, either as ultra vires the municipality or as beyond its own powers. Potter v. Calumet Electric St. R. Co. (C. C.) 158 Fed. 52; Rutherford v. Hudson River Traction Co., 73 N. J. Law, 227, 63 Atl. 84; People v. Suburban R. Co., 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650; Chicago General R. Co. v. Chicago, 176 Ill. 253, 52 N. E. 880, 66 L. R. A. 959, 68 Am. St. Rep. 188.

The courts hold that a corporation cannot question the constitutionality of an act under which it is incorporated. Whether upon the same principle a street railroad company is estopped in all cases to question the validity of a franchise contract under which it operates, and the benefit of which it has received, and is estopped from questioning the terms and conditions of the grant and the terms and conditions of the forfeiture, we need not now determine. In this case the grant and the forfeiture grow out of the exercise of legislative power and of contractual obligation. It can make no difference that the franchise was forfeited automatically by the failure to complete the trolley line within the period prescribed, and that the forfeiture

·"of the railway" to the city of New York is to become effective from the date of the passage of the enjoined resolution. The forfeiture of the one is as good as the forfeiture of the other. Just what is meant by the term "railway" in the resolution of forfeiture is not before us, and is not determined.

[8] The franchise contract, in making it incumbent on the Traction ·Company to complete the remaining portion of its line "within such time or times as may be directed by resolution of the board," made the obligation conditional by adding:

"Provided that title to the streets involved has been vested in the city and that said streets have been regulated and graded."

And it is said that on February 16, 1917, when the board passed its resolution directing the Traction Company to complete and put in operation its railway within 6 months from the date of the approval of the resolution, the title to the streets involved had not vested in the city, and the streets had not been "regulated and graded to their legal grade and full width." The words "legal grade and full width" are not the words used in the franchise contract. The words found there are simply "regulated and graded," and our attention has not been called to any decision holding that words so used in such ·contracts mean "regulated and graded to their legal grade and full width." There is no discussion of the matter in the court below. The ·opinion, however, states that—

"The city is not even now in a position to literally demand fulfillment by the railroad. While the streets and grades are so far advanced that the road and the city could, by working together, go ahead without modification of the contract, yet the city is not in a position where it can insist that the road must at its peril perform literally all parts of the agreement."

The record discloses that with certain exceptions, hereinafter referred to, the streets involved were graded to their full width and length. There were seven parcels on Lambertville avenue where the grading was not completed to the full width. But those parcels did not extend one-half way across the sidewalk of that street, and did not in a single instance touch or affect the grade of the 40-foot roadway, or interfere in any way with the construction of the trolley line. That portion of Lambertville avenue between Freehold street, and Medford street had a temporary grade, conforming to the grade of the Long Island Railroad Company's line, over which the city has a prior right of way, and the Long Island Road proposed to the Traction Company that it might operate its railway over a temporary trestle which might span its tracks until the Long Island Road elevated its tracks as required by the order of the Public Service Commission when Lambertville avenue and the Traction Company's road were to run thereunder.

We think, too, that it plainly appears that the title to the streets, except the crossing of the Long Island Railroad, is in the city, and as to that we have seen·that there is no obstacle in·the way of the construction of the trolley line by a trestle above. It appears, however, that there are perhaps 25 telephone poles which would possibly have

to be moved from the streets to be traversed, although in one of the affidavits the consulting engineer for the borough of Queens states that—

"Between Farmers avenue and Springfield boulevard several poles interfere and may have to be moved, but in my opinion no poles need be moved to allow the construction of this railway."

And it is said that, when a street is regulated and graded in the city of New York, it is the custom to move back all poles to an established line about 1½ feet inside of the established curb line, and it is estimated that the cost of the removal of the poles in this case would be approximately $675. It is said, too, that a few water hydrants would have to be moved, and that the overhanging branches of some 15 or 20 trees would have to be trimmed, so that they could not interfere with the wires of the trolley. We confess that these objections do not impress us. We do not find them justified by anything in the franchise contract which requires the streets to be "graded."

[18] To grade a street, or highway, strictly speaking, is to establish a level by mathematical points and lines, and then to bring the surface of the street or highway to that level, by the elevation or depression of the natural surface to the line as fixed, and we do not understand that the franchise contract under consideration means more than this as respects the city's duty to grade. In Smith v. Corporation of Washington, 20 How. 135, 148 (15 L. Ed. 858), Mr. Justice Grier, speaking for the court, said:

"Streets cannot be opened and kept in repair, or made safe or convenient for public use, without being made level, or as nearly so as the nature of the ground will permit. Hills must be cut down and hollows filled up, or, in other words, the road must be 'graded' or 'reduced to a certain degree of ascent or descent,' which is the proper definition of the verb 'to grade.'"

In Sedgley Avenue, 217 Pa. 313, 66 Atl. 546, it is said that "as a matter of fact the grading of a street is its physical opening." Then, the court adds, when the city is in funds, the physical grading is done, and sewers and water pipes and gas pipes are laid as part of the work; and it is said in that case that, when the physical opening and grading is done, those holding the title are entitled to be paid "for the grading; that is, for the depositing of dirt upon the street taken as a street, or the cutting out of dirt from that strip, according as the grading consisted of a 'fill' or a 'cut.'" We think the streets involved in the franchise contract were "graded," and we are not impressed by the claim that, because possibly a few telephone poles needed to be moved and a few trees needed to have their branches trimmed, the Traction Corporation was under no obligation to begin its work of construction. We find ourselves unable to accede to that view of the matter.

[9] The Traction Corporation claims, and the court below has held, that section 3, paragraph seventh, of the contract, did not comprehend a forfeiture of the entire grant. An examination of the franchise contract and its amendments shows that the intention of the parties was that the railway was to be constructed in separate sec-

tions, as the respective sections of territory to be traversed became populated and developed, and streets were established therein. Section 3, above referred to, provided that, upon the failure of the company to complete the construction and place in operation "any of the said portions of the railway" on or before the dates specified, the right herein granted shall cease. The court below thought it impossible to hold that the whole franchise was lost because a separable part or extension of the road was not completed on time. We do not so understand it. The right which "shall cease" is "the right herein granted," and "the right herein granted" was the franchise, and that was a single franchise, and not as many separate franchises as there were separate portions of the railway to be constructed. So section 5 of article 13 provides that in case of failure to comply with any of the provisions of the contract "this contract may be forfeited, either by a suit or by resolution of the board." Surely the intention is plainly indicated that the contract as a whole was to be terminated and come to an end by the failure to construct any. separable portion of the line within the specified period.

[10] The comptroller of the city of New York, on November 1, 1917, accepted payment of taxes from the Traction Corporation for the year ending September 30, 1917, while August 23, 1917, was the date on which the extension of the trolley line was to be completed. It is said that the acceptance of these franchise taxes bars the city from claiming forfeiture of the franchise contract. The answer is that the receipt of moneys by the administrative officers of the city in the course of the city's business cannot have the effect of a waiver of the rights of the public or of the municipality. See Wisconsin Central R. R. Co. v. United States, 164 U. S. 190, 17 Sup. Ct. 45, 41 L. Ed. 399.

[11] In the last analysis, the petition which the receivers have filed is in reality a bill in equity to be relieved against a forfeiture which the Traction Company incurred prior to their appointment. There are undoubtedly cases in which equity courts did and do relieve from forfeitures. Relief is afforded in all cases of forfeiture arising from nonpayment of money and in cases where the damage incurred is susceptible of pecuniary measurement and therefore of compensation. But it is equally well established that there are causes in which no relief from forfeiture can be granted. It is settled that, where the parties have so stipulated as to make time of the essence of the contract, a failure to perform at the time agreed upon cannot be relieved from. Pomeroy's Equity Jurisprudence (3d Ed.) vol. 1, § 455. So equity gives no relief from forfeiture growing out of breach of covenant to do some specific act. Bispham's Equity (8th Ed.) § 181. And a court of equity is powerless to grant relief from a forfeiture provided for by the express terms of statutory legislation. Clark v. Barnard, 108 U. S. 436, 455, 456, 457, 2 Sup. Ct. 878, 27 L. Ed. 780. In this case time is of the essence of the contract, the thing to be done is a specific act, and the forfeiture is imposed under and by virtue of statutory legislation by the state of New York, as found in the charter of the city of New York. A court of equity is therefore with-

out power to grant to the petitioners relief from the forfeiture which was incurred by those whose estates they are administering.

To summarize our conclusions, it may be said that the order appealed from is a final order, and the appeal therefrom was well taken; that as the matter involved is ancillary to the main suit the receivers were entitled to proceed as they did by petition; that on the facts disclosed the receivers have not made out a case, either of compliance with the contract, or of legal excuse for noncompliance, or any grounds of relief from forfeiture.

The order granting the injunction is reversed, without prejudice, however, to the right of the receivers to renew their application after the adoption of the proposed resolution by the board of estimate and apportionment, if the receivers then have reason to believe that the city of New York is proposing to take into its possession any of the visible and tangible property which has come into their hands as receivers, and which they are advised the city of New York is not entitled to take from their possession by virtue of the resolution aforesaid.

It is so ordered.