CITY OF DES MOINES, IOWA et al. v. CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. OF CHICAGO et al.

No. 14771.

United States Court of Appeals
Eighth Circuit.

July 2, 1953.

Allan A. Herrick and Herschel G. Langdon, Des Moines, Iowa (John A. Blanchard, Corporation Counsel, Des Moines, Iowa, on the brief), for appellants.

H. A. Steele, Des Moines, Iowa (Rex H. Fowler and W. Z. Proctor, Des Moines, Iowa, on the brief), for appellees Continental Illinois National Bank & Trust Co. of Chicago and E. B. Stofft, Trustees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order granting a preliminary injunction to prevent the threatened forfeiture of the franchise granted by the City of Des Moines, Iowa, to the Des Moines Railway Company, which is now in the hands of operating receivers pending foreclosure of the mortgage securing its bonded indebtedness.

The Des Moines Railway Company, until receivers were appointed, maintained and operated the street transportation system in the City of Des Moines, Iowa, under a franchise ordinance enacted in 1940. In January, 1952, the Company abandoned or curtailed service on certain lines which were being operated at a loss. The City brought suit in the District Court of Iowa in and for Polk County against the Company to compel it to restore this service and for a declaration that the City, at its election, might forfeit the franchise. The State District Court, on July 9, 1952, determined that the Company had no right to abandon or curtail service. That court also determined that the City was not entitled to the declaration it asked for. The Company was ordered, by a decree of the State court, to restore the service abandoned or curtailed on or before August 11, 1952.

The Continental Illinois National Bank and Trust Company of Chicago and E. B. Stofft, Trustees for the bondholders of the Railway Company, on August 4, 1952, brought an action in the United States District Court for the Southern District of Iowa against the Railway Company for a foreclosure of the mortgage securing its bonds and for the appointment of a receiver to conserve and operate its property pending foreclosure. Jurisdiction was based on diversity of citizenship and amount in controversy.

The Trustees in their complaint asserted, among other things, that the Railway Company had advised the City and the Trustees that it was financially unable to comply with the terms of the decree of the State District Court relative to the restoration of service. The Trustees further alleged that the Company's failure in that regard was ground for forfeiture of its franchise and that such a forfeiture would adversely affect the rights of bondholders and their trustees. By answer the Railway Company, on the same day the complaint was filed, admitted that it was financially unable to restore the service as required by the State court decree, and admitted that it was necessary for the Trustees, in the interests of bondholders, to institute the proceeding for the foreclosure of the mortgage and for a receivership.

The federal District Court on August 4, 1952, upon the complaint of the Trustees and the answer of the Railway Company, appointed receivers to take possession of, conserve and operate the property of the Railway Company. The court's order appointing the receivers and supplemental order of August 5, 1952, contained the usual broad restraint against interference with the receivers in the discharge of their functions and duties.

On September 2, 1952, the receivers applied to the federal District Court for instructions relative to the decree of the State District Court requiring the restoration of service by the Railway Company on or before August 11, 1952. The receivers asserted in their application that the restoration of service as required by the decree would entail an operating loss in excess of one hundred thousand dollars annually, and that "the restoration would quickly leave your receivers without funds to continue operation of even the remaining lines presently being operated." They also stated that the franchise ordinance under which operations were being conducted "empowers and authorizes an increase of fares with the consent of a majority of the members of the City Council."

The receivers, so far as the record shows, gave to the City no notice of their application for instructions, and apparently the City was afforded no opportunity to present its views relative to the effect of the decree of the State court upon the receivers. The federal District Court on September 2, 1952, the day the application was filed, entered an order which authorized the receivers to restore the service as

required by the State court "as and when the City of Des Moines, through its Council, will permit and establish such rates of fare as will produce operating income which will equal operating expenses, such operating expenses to include depreciation and taxes." The final paragraph of the order reads as follows:

"It is Therefore Ordered that the receivers herein be and they are hereby authorized to inform the appropriate officials of the City of Des Moines of their readiness and willingness to restore the services as ordered in the decree of the State Court as and when the City of Des Moines, through its Council, will permit and establish such rates of fare as described above in this order. Such agreement as may be effected by and between the receivers and the City of Des Moines shall be subject to the approval of this court."

The entry of this order by the federal District Court resulted immediately in the City, by vote of its Council, giving notice, dated September 3, 1952, to the Railway Company, its receivers, and the trustees for its bondholders, of the default in failing to restore service in compliance with the decree of the State court. The last paragraph of the notice reads as follows:

"You and each of you are further notified that the City of Des Moines, by and through its City Council, has declared and does hereby declare and notifies you that if such default shall continue for a period of three (3) months from and after the giving of this written notice to you, then and in that event said franchise shall stand forfeited, terminated and all of the rights and privileges of the Des Moines Railway Company and its receivers to maintain and operate its street railway system on any of the streets, or public ways of the City of Des Moines under said franchise shall be forfeited and at an end, all in accordance with the provisions of said franchise, and particularly Section [X]XXVI (36) thereof."

On November 22, 1952, the Trustees filed a complaint in the federal District Court to enjoin the City and the members of the City Council from declaring, accomplishing or enforcing any forfeiture or purported forfeiture of the franchise. The Trustees asked for a preliminary injunction. The court ordered the City and its Council to show cause why the application for a preliminary injunction should not be granted. The City and its Council after challenging the right of the Trustees to maintain their action in view of the fact that receivers had been appointed and were in possession of the property of the Railway Company, asserted that "It is a settled general rule that a Court of Equity will not enjoin a municipal legislative body from exercising legislative powers and the cases are clear in holding that the forfeiture of a franchise by a municipal council is the exercise of a legislative function which may not be enjoined. Des Moines Gas Co. v. City of Des Moines, 44 Iowa 505; Gas & Electric Securities Co. v. Manhattan & Q. Traction Corp., 2 Cir., 266 F. 625 (Appeal dismissed in Begg v. New York, 262 U.S. 196, 43 S.Ct. 513, 67 L.Ed. 946; Westinghouse Elec. & Mfg. Co. v. Richmond Light & R. Co., D.C. 267 F. 490."

The application of the Trustees for a preliminary injunction came on for hearing on November 29, 1952. By that time the members of a Bondholders' Protective Committee joined with the Trustees in a separate complaint asking for injunctive relief against the City's attempted forfeiture of the franchise. The District Court consolidated the injunction proceeding with the receivership proceeding. The court concluded that, under the terms of Section XXXVI of the franchise,[1] the or-

1. "Section XXXVI
"Forfeiture and Noncompliance.
"The Company by the acceptance of this ordinance expressly agrees with the City and obligates itself to comply with all of the terms and conditions of this ordinance throughout the period of time covered hereby, and so long as the Company continues to operate a street railway system in the City under or by virtue of the authority hereof. The Company further agrees that in the event

der of August 4, 1952, appointing receivers and taking the property of the Railway Company and its operation into the custody and control of the federal court, in a proceeding which it found was brought without the Company's connivance, precluded the City from declaring a forfeiture of the franchise until the termination of the litigation or the further order of the court. The court also concluded that the issuance of a preliminary injunction was necessary to prevent irreparable damage to the Trustees, the bondholders, and the property in the custody of the court.

The preliminary injunction, issued by the court on December 1, 1952, restrained the City and its Council from declaring, accomplishing or enforcing a forfeiture or attempted forfeiture of the franchise in suit, pending the final determination of the litigation or the further order of the court.

■ The granting of a preliminary injunction to protect and preserve an existing state of things from a seriously detrimental change, pending the determination of important and doubtful issues arising in litigation, is so commonplace and ordinarily so much a matter within the trial court's dscretion as to preclude a reversal on appeal, except for a clear abuse of discretion. In the case of Pratt v. Stout, 8 Cir., 85 F.2d 172, 176–177, this Court discussed the rules applicable to orders granting such injunctions and to the review of such orders on appeal. We said in that case, page 177 of 85 F.2d:

"When the nature of the questions which arise upon a suit make them a proper subject for deliberate examination, and if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined. Hadden v. Dooley, 2 Cir., 74 F. 429, 431; Blount v. Societe Anonyme du Filtre, etc., 6 Cir., 53 F. 98, 101."

■ It is obvious, of course, that what brought about the attempt of the City to pull the franchise from under the feet of

---

it shall make default in the observance or performance of any of the agreements or conditions herein required to be kept and performed by it, and if any such default shall continue for a period of three (3) months (exclusive of all times during which the Company may be delayed, or interfered with, without its connivance, by unavoidable accidents, labor strikes or the orders or judgments of any court entered in any suit brought without its connivance), after written notice thereof to it from the City, then and in each and every case, the City by its City Council shall be entitled to declare this ordinance and all the rights and privileges of the Company to maintain and operate its street railway system on any of the streets or public ways of the City to be forfeited and at an end; provided, however, that as to bonds heretofore issued by the Company and secured by a lien or liens on its street railway system, or should the Company to fund or refund its present indebtedness or to refund any bonds issued for such purposes, issue bonds secured by a lien or liens on its street railway system and property, including the rights and privileges granted in this ordinance, such forfeiture of this ordinance by reason of any default by the Company in the observance of the provisions thereof shall not impair or affect the right of the holders of such bonds to foreclose or otherwise enforce the lien or liens securing such bonds upon and against all the property of the Company, including the rights and privileges hereby granted. And it is hereby stipulated that any notice of default by the Company, upon which forfeiture shall be claimed, shall also be given by the said City to the trustees or mortgagees of record under any trust deed or mortgage securing such bonds. The purchaser at any foreclosure or other sale shall acquire no other or greater rights or privileges than are hereby conferred, and such purchaser shall hold said property so purchased at such foreclosure or other sale subject to the right of purchase by the City at any time thereafter as herein provided, and subject to the continuing terms, conditions and limitations of this ordinance, including the forfeiture provisions to the same extent as if the said purchaser had been the original grantee hereunder, except that a default by and a forfeiture against such purchaser shall be conclusive and shall terminate the rights and privileges hereby granted against such purchaser and any and all parties claiming by, through or under such purchaser."

the federal District Court, its receivers, the Trustees and the bondholders was the order of September 2, 1952, which made restoration of service, in compliance with the State court decree, conditional upon the Council's permitting an increase in rates. The legality of that order is not before us on this appeal, and we express no opinion about it. An appellate court, in reviewing an order granting or denying a preliminary injunction, will not consider the merits of the controversy between the parties further than is necessary to determine whether the trial court abused its discretion in making the order and this is particularly true where the rights of the parties can better be determined upon full proof of the facts. Pratt v. Stout, supra, page 177 of 85 F.2d.

 The giving of notice of forfeiture of the franchise by the City was not the way to test the legality of the District Court's order of September 2, 1952. If the legality of that order was to be questioned, it could be done only by laying the proper foundation through appropriate proceedings in that court. If such action had been taken and relief had been denied, resort could have been had to appellate proceedings. See and compare Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 90, 43 S.Ct. 480, 67 L.Ed. 871. While the District Court holds possession of the property of the Railway Company, it has power to hear and determine all controversies relating thereto. Palmer v. State of Texas, 212 U.S. 118, 126, 129–130, 29 S.Ct. 230, 53 L.Ed. 435; Lion Bonding & Surety Co. v. Karatz, supra, page 89 of 262 U.S., page 484 of 43 S.Ct.

We think the District Court, after having assumed the custody and control of this transit system, was not required to permit the City, pending the determination of its controversy with the Company, the receivers and the Trustees, to go any further than it had gone, at the time the preliminary injunction was granted, toward destroying or impairing the value of the property in the court's custody by attempting to forfeit the franchise granted to the Railway Company.

The City and its Council, in substance, contend, however, that the Council being a legislative and governmental body and the forfeiture of the franchise in suit requiring legislative and governmental action, the court was without power to enjoin such action, even temporarily. The rule which the City invokes is stated in Gas & Electric Securities Co. v. Manhattan & Queens Traction Corporation, 2 Cir., 266 F. 625, 635, as follows:

"The general rule is that a court of equity will not issue an injunction to restrain a municipal corporation from the exercise of legislative or governmental power, even though the contemplated action may be in disregard of constitutional restraints and may impair the obligation of a contract. New Orleans Waterworks Co. v. New Orleans, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518; Dillon's Municipal Corporations (5th Ed.) vol. 2, § 582; McQuillin's Municipal Corporations, vol. 5, § 2503, and volume 1, § 705.

"In High on Injunctions (4th Ed.) vol. 2, § 1243, p. 1250, the rule is correctly stated when it is said to be—'unquestionably true that purely legislative acts, such as the passage of resolutions, or the adoption of ordinances by a municipal body, even though alleged to be unconstitutional and void, will not be enjoined, since it is not the province of a court of equity to interfere with the proceedings of municipal bodies in matters resting within their jurisdiction, or to control in any manner the exercise of their discretion. * * * And while courts of equity will not enjoin municipal bodies from the passage of ordinances or resolutions, the courts may and will, on a proper case being shown, prevent their enforcement, and for this purpose may enjoin proceedings thereunder which would otherwise result in irreparable injury.' "

In Westinghouse Electric & Mfg. Co. v. Richmond Light & R. Co., 267 F. 490, 491–492, the District Court for the Eastern District of New York questioned the correctness of the rule as stated in the Man-

734

hattan & Queens Traction Corporation case, but, nevertheless, reluctantly followed it. Other cases, to much this same effect, which are relied upon by the City are: New Orleans Water Works Co. v. New Orleans, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518; Des Moines Gas Co. v. City of Des Moines, 44 Iowa 505; Missouri & K. I. Ry. Co. v. City of Olathe, C.C.Kan., 156 F. 624.

█ Under the rule for which the City contends, its Council may not be enjoined from passing as many ordinances or resolutions as it sees fit, proclaiming and declaring the franchise forfeited, but may be enjoined from effectuating any forfeiture declared pending the outcome of the litigation. As a practical matter, the City has, so far as the record shows, done all that it needs to do to forfeit the franchise, provided that at the time it gave notice of forfeiture it had the legal right to declare a forfeiture. That is the doubtful question which the District Court reserved for trial on the merits. The case, as we see it, does not turn upon legislative or governmental action by the City, but upon the construction of the franchise contract which the City entered into with the Railway Company, and by the terms of which the bondholders of the Company appear to have rights which the City may not ignore.

Our conclusion is that the District Court was well within the bounds of its discretion in issuing a preliminary injunction to prevent the threatened forfeiture of the franchise *pendente lite*.

The order appealed from is affirmed.