JOHNSON, Judge.
This cause is styled as an interlocutory appeal from an order granting a temporary injunction enjoining appellant from continuing to operate a borrow-pit in alleged violation of the Zoning Code of the City of Jacksonville. However, it appears from the record that the trial judge, after announcing an intention to issue the temporary injunction, suggested that the appeal be from the temporary order and further stated that should he enter a permanent order, he would “then order a filling-in of the excavation.”
Three questions have been raised in this appeal. The first is whether or not the borrow-pit was actually commenced and in active, bona fide operation on the property prior to October 1, 1972, the effective date of a new zoning ordinance prohibiting such operation. The second is whether or not appellee is estopped from seeking to enjoin appellant from continuing the use of the borrow pit. The third is whether or not the trial court erred in entering a' temporary injunction without requiring a bond (or failing to state in the injunction order whether or not bond was required). We answer the latter two questions in the negative, but do not feel that these' questions are necessary or determinative of the ultimate disposition of this cause. The first question, whether the borrow-pit was actually commenced and in active bona fide operation prior to the effective date of a new zoning ordinance prohibiting such operation, we answer in the affirmative and thereby reverse and quash the temporary injunction entered below.
It was agreed by counsel for the appellee that the appellant’s evidence established that there were some 10 truck loads *468 of dirt-dug and removed from the subject property for purposes of sale to North Florida Trucking Corporation on September 29, 1972. The trial court also entered this fact in his findings of fact in the preface to the temporary injunction. However, the trial court did not, at this stage of the proceedings, agree that the evidence sustained the appellant’s contention that the bona fide borrow-pit was in operation prior to October 1, 1972. This is where we think the trial court committed error.
The evidence, uncontradicted and in fact admitted by appellee’s counsel, was that Mr. Ellmaker and Mr. Bryce, who later became sole stockholders of Bemas Corporation, had entered into a contract to buy the subject property in May of 1972, at which time the City Ordinance in effect at that time permitted the operation of a borrow pit on this land. The contract itself indicated that the borrow-pit operation may have been intended by the buyer from a provision therein promising that the buyer “agrees to do no digging . . . prior to mortgage being paid in full.” The testimony is to the effect that when the buyers learned of the impending change in the Ordinance, prohibiting borrow-pits, the buyers contacted the office of the Chief of the Building and Zoning Inspection Division for advice as to what they could do. They were advised that if the borrow pit were commenced and in active operation prior to October 1, 1972, it would be considered as an existing non-conforming use. Hence, the advice was to start digging before October 1, 1972. Admittedly, the buyers rushed up the closing of the contract of sale and had an agreement with the trucking company to start digging as quickly as the sale could be closed. This happened about 5:00 p.m. on September 29, 1972, but there was the beginning of a borrow-pit operation by the digging, removing and selling of ten truck loads of dirt. When all the evidence is considered, there leaves no doubt that the property was bought for the borrow pit purpose, nor any doubt that the buyers were doing their best to get in before the change in the Ordinance took effect. The evidence clearly shows the intent of the buyers to start a borrow pit. The Ordinance only provides that the operation be commenced. The Ordinance also provides that the nonconforming business would be “grandfathered in” so long as the operation is not discontinued for a period of 12 months.
The evidence of the attempt and intent to commence the borrow pit operation seems to us to be clear and undisputed. Only so much can be done in the last moment rush to come under the wire. It is like a man deciding to claim his residence or place of domicile for the purpose of determining homestead upon death of the homesteader. There is no fixed time that must elapse before the determination of the homesteader to claim his homestead before the date of death. The intent becomes instantaneous. But in the case sub judice, the intent has been shown to have existed for several months. The small defect of title or encroachment delayed the closing on the contract, but this delay was doing no harm until it was suddenly shown to the buyers that they were going to be shut out of their intentions by the change in the Ordinance unless they did a “hurrying job on the commencing of the borrow-pit operation.”
We will not say that we blame the owners of the adjacent lands from not wanting the borrow-pit operation, but they should have asked for the change in the Ordinance earlier. Besides, it appears that there was already a similar operation nearby.
Again, with reference to the remaining two questions on appeal, we do not believe that appellant successfully carried the burden of evidence to estop the City, but this question need not be decided. The contact was made to the City Offices, but this contact only enhanced the strength of the intent of the buyers to begin a borrow-pit. This was not contradicted by the appellee. The contention that it was error not to require bond is without merit.
*469 We conclude that the trial court abused its discretion when it disbelieved the intent of the buyers to commence a borrow-pit operation. The evidence was too great for the trial judge to have ruled otherwise. While the issuance of a temporary injunction is a matter of discretion with the trial court, such a writ is an extraordinary and drastic remedy which should be granted sparingly and with caution only after the movant has proven sufficient facts entitling it to relief. Sackett v. City of Coral Gables, 246 So.2d 162 (Fla.App.3rd, 1971).
We therefore hold that the trial court erred in granting the injunction. The same is reversed and quashed with directions to enter an order granting to appellant the right to operate a borrow-pit on the subj ect land.
It is so ordered.
SPECTOR, Acting C. J., and McCORD, J., concur.